COMMONWEALTH *vs.* WILLIAM H. MARA, JR.

Berkshire.    September 21, 1926. — October 13, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Way,* Public. *Motor Vehicle,* Operation. *Pleading, Criminal,* Indictment. *Evidence,* Presumptions and burden of proof, Of existence of public way, Competency. *Practice, Criminal,* Charge to jury, View, Exceptions, Requests for rulings and instructions, Discretionary control of trial. *Witness,* Cross-examination.

An indictment, charging the defendant with operating a motor vehicle upon a public way so that the "lives and safety of the public" might be endangered, is in proper form to charge a violation of G. L. c. 90, § 24, which makes it a criminal offence to operate a motor vehicle upon any way so that the "lives or safety" of the public may be endangered.

Where, at the trial of an indictment charging the defendant with operating a motor vehicle upon a public way so that the "lives and safety of the public" might be endangered, the jury took a view of the street which was the scene of the alleged crime and there was evidence that it was well lighted, over thirty-six feet in width between curbs with a surface of cement or concrete, and with crossroads leading from it, that there were houses upon both sides and a considerable amount of traffic in both directions, that it was referred to by some witnesses as the main road from Pittsfield to Lenox and as a highway, that in the immediate vicinity of the alleged crime there were a hydrant, electric lights and, in the middle of the street, the tracks of a street railway, it was proper for the trial judge to instruct the jury that it was for them to say, from what they observed on the view and from the other evidence in the case, whether the street was a public way; and a finding was warranted that it was a "way" within the meaning of G. L. c. 90, §§ 1, 24.

There was no error in that part of the instructions above described which permitted the jury in deciding the issue before them to consider what they observed on the view.

Illustrations used by the trial judge in the charge to the jury at the trial of the indictment above described, stated by him to be used by the jury only as illustrations, to explain the distinction between reckless operation of an automobile and so operating that the lives and safety of the public might be endangered, were *held* not to be objectionable; and it *also was held* that a contention by the defendant, that some additional illustrations should have been used to show circumstances under which the defendant would be entitled to acquittal, was not a ground for sustaining an exception to the charge.

There was evidence at the trial above described that at 11 P.M. on a public way the defendant operated his motor vehicle at the rate of twenty-five miles per hour and struck a woman and her son, three years of age,

who had come from a side street to take a street car at a regular stopping place, and that the boy was killed and his mother was seriously injured. The judge, subject to exceptions by the defendant, in his charge submitted the following tests to be applied by the jury: "Did the defendant, by the manner in which he operated his motor vehicle, create a reasonable possibility of danger to the lives or safety of the public? . . . Was the defendant, by reason of his manner of operating, the entire cause of the danger? . . . Was the defendant's manner of operation a part of the cause of that danger?" The judge stated as to each question that if the jury answered the question "Yes," they would be warranted in finding the defendant guilty of the offence charged; and that, even if they answered the second question "No" and the third question "Yes," they might find him guilty. *Held,* that the exceptions to the submission of such tests to the jury must be overruled.

At the trial of the indictment above described, testimony was admitted without objection concerning a certain curved mark on the pavement, one hundred and eighty-four feet long, discovered one or two hours after the accident. Later, the defendant moved to strike out the evidence and, the motion being denied, asked the judge to rule that, unless the jury found beyond a reasonable doubt that the mark on the pavement was caused by the operation of the defendant's motor vehicle, all evidence concerning it should be disregarded by them, as well as any inference by reason of the existence of the mark as to the speed or other manner of operation of the defendant's car. The ruling was refused. In the charge the judge referred to the significance of certain evidence if the jury believed the testimony and stated that all essential allegations necessary to constitute the offence charged must be established beyond a reasonable doubt. *Held,* that

(1) The motion to strike out properly was denied;

(2) The exceptions to the refusal by the judge to select a portion of the evidence for comment must be overruled;

(3) The defendant's rights were protected sufficiently by the judge.

At the trial of the indictment above described the following rulings by the trial judge as to exclusion and admission of testimony were proper:

(1) The exclusion of questions to lay witnesses seeking to prove what might have happened if the persons on the highway had stood still, the questions calling for conclusions which were solely within the province of the jury, or for evidence that would be purely speculative and of no value;

(2) A hypothetical question to an experienced driver of motor vehicles properly was excluded in the discretion of the trial judge as not containing the elements essential to make the answer helpful to the jury;

(3) An exception by the defendant, noted after one sitting beside the defendant in the automobile had answered negatively a question, "You didn't have any liquor with you that night?" was overruled;

(4) Questions asked by the district attorney of a State inspector of motor vehicle traffic, seeking to show bias on his part because during the trial he had demanded from the district attorney his reports of interviews with witnesses and had shown them to counsel for the defendant, properly were admitted in evidence in the discretion of the judge;

(5) Certain hypothetical questions to one called by the defendant as an experienced driver of motor vehicles and a dealer in and salesman of motor vehicles and tires, relating to conclusions from his observations of the condition of a tire of the defendant's automobile, properly were excluded, the judge ruling that the witness was not an expert on the practical questions of dragging of tires, and permitting the witness to state in detail what he had observed as to the tire; and the word "natural" properly was struck from an answer by such witness, "I just observed just natural wear."

INDICTMENT, found and returned on July 16, 1924, in two counts, the first count charging that the defendant on May 31, 1924, at Pittsfield "upon a public way in said Pittsfield did operate a motor vehicle recklessly"; and the second count charging that the defendant "at the time and place aforesaid did operate a motor vehicle upon a public way so that the lives and safety of the public might be endangered."

In the Superior Court, in July, 1925, the action was tried before *Dillon*, J., then a judge of a district court sitting in the Superior Court under Sts. 1923, c. 469; 1924, c. 485. The defendant moved that the second count of the indictment be quashed because it set "forth that the defendant did operate a motor vehicle upon a public way, so that the lives and safety of the public might be endangered, whereas the offense set forth in the statute is that of operating a motor vehicle upon a public way so that the lives or safety of the public might be endangered."

The motion was denied.

The evidence of the Commonwealth was in part that a Mrs. Plumb and her son, three years of age, were crossing a street preparatory to taking a street car when an automobile driven by the defendant struck them. One Florence Heather testified that she was accompanying Mrs. Plumb and the boy, having hold of the boy's hand, when, seeing the automobile approaching, she ran across to the side of the street, letting go of the boy's hand at the mother's request, and did not see them when they were struck. In her cross-examination, subject to exceptions by the defendant, the following questions were excluded: "If you had remained at the center of the track where you were, the automobile could have passed you safely on the east, couldn't it? Assuming the

automobile was continuing in the course it was pursuing at the time you last saw it, and you had remained near the car track, the automobile would have passed you on the east, wouldn't it? Where would the automobile have passed, Miss Heather, if you had remained at the place just before you started to cross over to the east and the automobile continued to pursue the course it was going? Would you have been struck? Where would the automobile have gone?"

One William C. Herbst, called by the defendant, testified that he was an automobile salesman and that he was in the defendant's automobile at the time of the accident. He was asked in direct examination: "Assuming, Mr. Herbst, that Mr. Mara's car had kept on in the same course that it was going immediately before Miss Heather started for the curb, and that Miss Heather and Mrs. Plumb and the little boy had stayed in the same position that they were before Miss Heather started for the curb, would there have been any collision?" the defendant offering thereby to show "that there would not have been any collision." The question was excluded subject to the defendant's exception.

The witness Herbst also was asked on cross-examination, "You didn't have any liquor with you that night?" and answered, "No, sir." The defendant then objected, and, his objection being overruled, he alleged an exception. Herbst then was asked without objection, "You are positive about that?" and answered, "Yes, sir."

One James T. Goggins, a demonstrator of automobiles with fourteen years' experience, was asked in direct examination by the defendant: "Assuming that a Hudson touring car, weighing about two thousand nine hundred pounds with three persons in the front seat, weighing together perhaps four hundred fifty pounds, and with no one in the back seat, is being operated on a concrete pavement at the rate of more than twenty-five miles an hour and that the operator sharply applies his foot brakes, which are in good condition, and at the same time attempts to make a sharp turn at right angles, what, in your opinion, would be the result?" the defendant offering to show "that the car would be apt to turn over."

The judge, subject to exception by the defendant, excluded the question "on the ground that it doesn't include all the elements of a proper hypothetical question for this case."

One Thomas Keltchka, a State inspector of motor vehicle traffic, called by the defendant, testified to interviews which in the course of his duties he had after the accidents with the witnesses Mrs. Plumb and Miss Heather. In cross-examination he testified that the district attorney had had his report for two days and that, previous to his testifying, he had demanded the report from the district attorney and had shown it to the counsel for the defendant. Subject to exceptions by the defendant, the following testimony then was admitted: Q. "What did you do that for?" A. "For the reason that in submitting the report to the assistant district attorney I did so with the statement that I intended both sides should be shown the report." Q. "Have you ever refused other defendants your reports?" A. "Never after a subpoena has been issued for my testimony." Q. "I asked you if you have ever refused to show your reports." A. "Never after a subpoena has been issued." Q. "I am not asking you that. Have you ever refused to show your reports to other defendants?" A. "I do not recall."

One Ralph M. O'Connell, called by the defendant, testified that he "was for many years an operator of motor vehicles, a dealer in and salesman of motor vehicles and of tires, that he had examined this morning the right rear tire in question which the Commonwealth contended had left the one hundred and eighty-four foot mark on the pavement." Questions asked of him, as to whether he noticed "anything about the surface of the tire that would indicate that it had been dragged" or "that showed anything other than ordinary wear and tear" were excluded. The judge stating to the defendant's counsel that the witness was "not an expert on the practical question of dragging of tires and that his conclusions are not admissible," but "that anything that he saw or observed about the tire as the result of his careful examination he may testify to," the witness then was asked, "What did you observe, if anything, about the surface of that tire . . . ?" and answered, "I just observed just natural

wear." On motion by the Commonwealth, the word "natural" was struck out. The witness in cross-examination testified, in response to the question, "The tire was worn somewhat?" answered, "Why, just natural wear," and the judge struck out "natural wear" on the ground that the words were not responsive to the question.

Other material evidence at the trial is described in the opinion. The defendant asked for the following rulings:

"1. The fact that an accident happened, and that the little boy was killed and Mrs. Plumb injured as a result of being struck by the defendant's car, is not enough to convict the defendant of operating so that the lives or safety of the public might be endangered.

"2. To find the defendant guilty of the second count, the jury must find some improper act of the defendant which might endanger the lives or safety of the public.

"3. To find the defendant guilty of the second count, the jury must find some act of the defendant which might endanger the lives or safety of the public.

"4. If the defendant saw members of the public on the highway in a position of peril of immediate collision with his car, which position of peril was not created in whole or in part by the defendant's operation of his car; and thereupon the defendant being called upon to act in an emergency, in the attempt to avoid such collision operated his car in accordance with his best judgment, and in a reasonable manner considering the exigency presented, then the defendant is not guilty of operating so as to endanger the lives or safety of the public, even though he was unable to avoid such collision.

"5. If the defendant saw members of the public on the highway in a position of peril of immediate collision with his car, which position of peril was not created in whole or in part by the defendant's operation of his car, and which peril was not anticipated and could not reasonably have been anticipated by the defendant; and thereupon the defendant being called upon to act in an emergency, in the attempt to avoid such collision operated his car in accordance with his best judgment, and in a reasonable manner considering the exigency presented, then the defendant is not guilty of

operating so as to endanger the lives or safety of the public, even though he was unable to avoid such collision.

"6. Unless the jury find beyond a reasonable doubt that the defendant at or immediately prior to the accident, was operating his car at a greater rate of speed than was reasonable and proper, having regard to traffic and the use of the way and the safety of the public, then his rate of speed however great, is not evidence of his driving so as to endanger the lives or safety of the public.

"7. If the defendant saw members of the public on the highway in a position of peril of immediate collision with his car, which position of peril was created by circumstances over which the defendant had no control; and thereupon the defendant being called upon to act in an emergency, in the attempt to avoid such collision operated his car in accordance with his best judgment, and in a reasonable manner considering the exigency presented, then the defendant is not guilty of operating so as to endanger the lives or safety of the public, even though he was unable to avoid such collision.

"8. If the defendant saw members of the public on the highway in a position of peril of immediate collision with his car, which position of peril was created by circumstances over which the defendant had no control, and which peril was not anticipated and could not reasonably have been anticipated by the defendant; and thereupon the defendant being called upon to act in an emergency, in the attempt to avoid such collision operated the car in accordance with his best judgment, and in a reasonable manner considering the exigency presented, then the defendant is not guilty of operating so as to endanger the lives or safety of the public though he was unable to avoid such collision.

"9. If the defendant was operating a car in a manner subordinate to the reasonable use of the road by the public, then he was not guilty of operating so as to endanger the lives or safety of the public.

"10. If the defendant was operating a car in a manner subordinate to such use of the road on the part of the public as the defendant might reasonably anticipate or guard against, considering the circumstances presented at the time

and place, then the defendant is not guilty of operating so as to endanger the lives or safety of the public."

"14. If the defendant is found guilty on either count, he must be found not guilty on the other count."

"17. The driver of a motor vehicle is not obliged to assume, until the contrary is actually presented to his view, that members of the public on the highway will act irrationally, in the matter of avoiding or placing themselves in a place of danger as regards the motor vehicle, under the circumstances of the time and place.

"18. The two counts in this indictment are both based on the same act or series of acts on the part of the defendant.

"19. Unless you find beyond a reasonable doubt that the so called one hundred and eighty-four foot mark on the pavement was caused by the operation of the defendant's motor vehicle, all evidence concerning it should be disregarded by you, as well as any inferences by reason of the existence of the mark as to the speed or other manner of operation of defendant's car."

In his charge, the judge instructed the jury in part as follows: "We will suppose that an operator of a motor vehicle is proceeding along a public way and approaches the site of a schoolhouse. We will assume that around that schoolhouse there is no play ground, but that the children are all in the public way at play. If that operator then and there is proceeding at a rapid rate of speed and takes no account of the presence of those children in the public way and the fact that they are at play, does not in any way lessen his speed or submit his automobile to control, but proceeds directly in disregard of the presence of the children in the public way, mindful of and in wanton disregard of the probability of accident, then that presents a case of reckless driving.

"On the other hand, if this same operator approaches the site of a schoolhouse, but in this instance a schoolhouse that has ample play grounds around it, in which he plainly observes children at play and from which there opens into the public way a gate or two plainly visible to his eyes, under those circumstances and in the presence of those children at play, unless he brings his machine under such control that

he could prevent injury to those children at play in the event they should playfully dash out upon the public way through an open gate, then he would be guilty of the second offence because he would be operating his motor vehicle in a manner so that the lives and safety of the public might be endangered, it being immaterial whether a child dashed playfully from the open gate or not.

"Now again, assuming that a driver is operating a motor vehicle along a public way, and he sees a street car stop to receive passengers, he sees a number of persons depart from the sidewalk in the direction of the street car, apparently to board the street car as passengers, now if he observes that situation and says to himself, 'I am going to take a chance and drive through that crowd and I probably will hit some one, but I am going to take the chance.' Proceeding under those circumstances in wanton and wilful disregard of their rights, he would be guilty of reckless conduct. But if, on the other hand, under the same circumstances, he says to himself, 'I think it is safe for me to go ahead. There is a possibility that I may hit somebody, but I am going to take that chance just the same,' then he is guilty of operating in a manner so that the lives and safety of the public might be endangered, because he had in contemplation the possibility of injury in contrast to the probability of injury in the case of the wanton and reckless driving that I have previously referred to.

"Now, . . . remember that I submit those instances by way of illustration; that is, you are to use them as illustrations, and where I have referred to a street car in illustrating, I do not mean the street car in this case.

"To simplify in a small degree your deliberations the work of discovering the truth in this case, there are certain test questions that you can apply, and these with reference to the second count. The first question is: Did the defendant, by the manner in which he operated his motor vehicle, create a reasonable possibility of danger to the lives or safety of the public? A reasonable possibility, did he create it? Now if your answer is Yes to that question, you would be warranted in finding that the defendant was guilty of the offence charged.

"Now second, it being a fact that there was injury to the public, that there was a person killed and another person injured, you may apply test question number two. Was the defendant, by reason of his manner of operating, the entire cause of the danger? If you should answer that Yes, then you would be warranted in finding the defendant guilty.

"A third question, under the given instance where injury to the public resulted: Was the defendant's manner of operation a part of the cause of that danger, a part of the cause? And if you answer that question Yes, you would be warranted in finding that the defendant was guilty of the offence charged."

The defendant alleged exceptions to a failure by the judge to give the rulings quoted above; to an instruction "that the jury could find the defendant guilty on the second count if it found the defendant operated a motor vehicle so that he might endanger either the lives or safety of the public"; to the illustrations and to the first and third tests in the charge above quoted, and particularly "to the fact that in every illustration that you gave, it was an illustration that he might be found, under certain circumstances, guilty, and your Honor's failure to give any illustrations of any conditions under which he might be found not guilty."

The defendant having objected that the language in the charge to the effect that it was admitted that the automobile driven by the defendant was on a public way, whereas there had "been no understanding or agreement of any sort between the district attorney and counsel for the defendant as to that," the judge, subject to exceptions by the defendant, further charged the jury as follows: ". . . the question is raised that there isn't any evidence that South Street is a public way. Now it's for you to say whether or not there is any evidence from what you observed on the view, and what other evidence there is in the case, as to whether South Street in Pittsfield is a public way."

The defendant was found not guilty on the first count and guilty on the second count, and alleged exceptions.

*J. M. Rosenthal,* (*J. B. Cummings* with him,) for the defendant.

*C. H. Wright,* District Attorney, *J. M. Shea,* Assistant District Attorney, for the Commonwealth, submitted a brief.

SANDERSON, J. The defendant was convicted under a count charging him with operating a motor vehicle upon a public way so that the "lives and safety of the public" might be endangered. This count is in proper form to charge a violation of the statute (G. L. c. 90, § 24) which makes it a criminal offence to operate a motor vehicle upon any way so that the "lives or safety" of the public might be endangered. See *Commonwealth* v. *Atkins,* 136 Mass. 160, 161; *Commonwealth* v. *Ahern,* 228 Mass. 547, 548. See also the forms prescribed in G. L. c. 277, for setting up or promoting a lottery, neglect of wife or minor child, and keeping or maintaining a nuisance.

The jury could have found that the defendant was operating an automobile at a speed of twenty to twenty-five miles an hour, going in a northerly direction on South Street, in Pittsfield, at about eleven o'clock at night; that two women and a boy about three years old came out of a side street to a stopping place for a street car, intending to take the car; that as they reached a point near the rail the street car was approaching and an automobile driven by the defendant was coming in the same direction. The automobile struck one of the women and the boy, causing the death of the boy and serious injury to the woman. The defendant moved for a directed verdict upon the ground that the Commonwealth had not proved that South Street was a public way.

The trial judge instructed the jury, subject to the defendant's exception, that it was for them to say, from what they observed on the view and from the other evidence in the case, whether South Street in Pittsfield is a public way. The defendant admitted that if there was evidence, not including anything the jury saw or might have seen on the view, upon which the jury was entitled to find that the defendant was operating the automobile on a public way, then it was proper for the judge to deny the motion for a directed verdict.

"Way" is defined in G. L. c. 90, § 1, as "any public highway, private way laid out under authority of statute, way dedicated to public use, or way under the control of park

commissioners or body having like powers." The evidence tended to prove that the street was well lighted, over thirty-six feet in width between curbs with a surface of cement or concrete, and with crossroads leading from it. There were houses upon both sides, and a considerable amount of traffic in both directions. The street was referred to as the main road to Lenox, and the defendant testified that he had driven up and down South Street for eight years. Some of the witnesses spoke of it as a highway. The plan used as a chart showed the location of a hydrant and the tracks of the street railway company in the center of the street. Upon this evidence South Street appeared to be an important city street and there was nothing in the evidence to suggest that it was not a way within the meaning of the statute quoted. Curbings, concrete paving, electric lights and hydrants in a street are commonly the result of the expenditure of public money for the public use and convenience. Street railway tracks, apart from special authority, are located in public ways. G. L. c. 161, § 54. It would be highly improbable that the main road from Pittsfield to Lenox should be a private way. The jury had the right to infer from the testimony that the street was a way within the meaning of the statute. The case seems to be controlled in principle by *Commonwealth* v. *Leone,* 250 Mass. 512, 515, in which there was no evidence to show how St. Lawrence's Square in Lawrence came to be established as a way, and this court held that there was no error in the denial of a motion for a directed verdict.

In *Jones* v. *Boston,* 201 Mass. 267, 268, the way which was held not to be one "opened and dedicated to the public use" under R. L. c. 48, §§ 98, 99, although "it was of such appearance as to lead an ordinarily observant traveller to suppose it was a public highway and not a parkway," was shown by the evidence to have been laid out as part of a public park by the park commissioners.

There was no error in the part of the instructions which permitted the jury to consider in deciding this question what they observed on the view. See *McMahon* v. *Lynn & Boston Railroad,* 191 Mass. 295, 298; *Commonwealth* v.

*Dascalakis*, 246 Mass. 12, 29. The judge had previously stated to them that they could take into consideration as evidence what was pointed out to them on the view. No question was raised at the trial as to the view or anything that was pointed out on it, and there was evidence that the condition of the street at the time of the trial was the same as at the time of the accident.

The judge instructed the jury as to the nature of the crime charged in the second count in the words of this court in *Commonwealth* v. *Pentz*, 247 Mass. 500. In stating the distinction between reckless operation of an automobile and so operating that the lives and safety of the public might be endangered, he used certain illustrations which were to be considered by the jury only as illustrations. There is no valid ground for objecting to them. See *Commonwealth* v. *Dzewiacin*, 252 Mass. 126, 131. The defendant's contention that some additional illustrations should have been used to show circumstances under which the defendant would be entitled to an acquittal, is not a ground for sustaining the exceptions. Under the charge the jury could convict if they found that the defendant, by the manner in which he operated his automobile, created a reasonable possibility of danger to the lives and safety of the public, and if he was by reason of the manner in which he operated it in whole or in part the cause of that danger. The fair meaning of the charge is that, unless the jury found that he so operated the automobile, it would be their duty to acquit. The exceptions to the illustrations given and to the failure to give other illustrations, and to the questions referred to as test questions, must be overruled.

The testimony concerning a certain curved mark on the pavement, one hundred and eighty-four feet long, discovered one or two hours after the accident, was not objected to when offered and the motion to strike it out later was properly denied. The evidence was in the case for the consideration of the jury, and it was for them to say upon the whole evidence whether the mark was caused by the defendant's automobile. The defendant asked the trial judge to rule that unless they found beyond a reasonable doubt

that the so called one hundred and eighty-four foot mark on the pavement was caused by the operation of the defendant's motor vehicle all evidence concerning it should be disregarded by them, as well as any inference by reason of the existence of the mark as to the speed or other manner of operation of the defendant's car. The judge was under no obligation to select this part of the evidence for instruction. The case was for the jury on the whole evidence. See *Commonwealth* v. *Johnson*, 188 Mass. 382, 387; *Commonwealth* v. *Feci*, 235 Mass. 562, 571. The defendant's rights were sufficiently protected by the parts of the charge referring to the significance of certain evidence if the jury believed the testimony and stating that all essential allegations necessary to constitute the offence must be established beyond a reasonable doubt. There was no reason for giving any ruling as to the duty of a person when called upon to act in an emergency. The instructions requested, except in so far as given, were properly refused.

The exceptions to the exclusion of questions asked in cross-examination of the witness Heather, and in direct examination of the witness Herbst, are overruled, either because they called for conclusions which were solely within the province of the jury, or for evidence that would be purely speculative and of no value.

The hypothetical question to the witness Goggins was properly excluded in the discretion of the trial judge as not containing the elements essential to make the answer helpful to the jury.

The objection to the question about liquor, in cross-examination of the witness Herbst, became immaterial because of the answer of the witness. In the discretion of the trial judge, the questions in cross-examination of the witness Kletchka were admissible to show bias or prejudice. Questions calling for conclusions reached by the witness O'Connell from his observation of the condition of one of the tires on the automobile were properly excluded.

The judge was justified in striking from the answer of the same witness the word "natural." All facts in regard to the condition of the tire observed by him were admitted. The

witness later testified without objection that the surface of the tire was not different from what would appear on the surface of any tire driven three or four weeks. It appeared, also, that the jury saw this tire on a view.

All exceptions argued have been considered.

*Exceptions overruled.*