COMMONWEALTH vs. JAMES J. HART, FOURTH.

No. 87-1389.

Middlesex. May 10, 1988. — July 27, 1988.

Present: GRANT, CUTTER, & KASS, JJ.

*Practice, Criminal,* Required finding. *Motor Vehicle,* Operating under the influence. *Way,* Public: What constitutes.

A private way that was a continuation of a public way, that had no gate or signs to mark its status, and that was used generally by the public for access to various commercial buildings on both sides of the private portion, was a "way or . . . place to which members of the public have access as invitees or licensees" within the scope of G. L. c. 90, § 24(1) (*a*)(1), with respect to the operation of motor vehicles by persons under the influence of intoxicating liquor. [237-238]

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on April 25, 1986.

On transfer to the jury session of the Lowell Division, the case was tried before *John B. Murphy, J.*

*Edward S. Englander* (*Anne Carney Blain* with him) for the defendant.

*Patricia M. Darrigo,* Assistant District Attorney, for the Commonwealth.

KASS, J. James J. Hart, IV, the defendant, concedes that when the police stopped him past midnight on April 25, 1986, he was driving under the influence of intoxicating liquor. The question he raises on appeal is whether, at the time the police first noticed him, he was operating "upon any way or in any place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24(1)(*a*)(1), as appearing in St. 1982, c. 373, § 2. Hart was convicted of violating that statute.

At trial before a jury of six the defendant timely moved for a required finding of not guilty. Mass.R.Crim.P. 25(a), 378

Mass. 896 (1979). We appraise the evidence in a light most favorable to the government, without weighing contrary evidence presented by the defense. *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976). *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 750 n.9 (1986). *Commonwealth* v. *Colby*, 23 Mass. App. Ct. 1008, 1010 (1987). So measured, we ask whether the evidence was sufficient to warrant a rational trier of fact in concluding beyond a reasonable doubt that the police saw the defendant driving on a way of the sort described in § 24(1)(*a*)(1). *Commonwealth* v. *Latimore*, 378 Mass. ·671, 677-678 (1979). *Commonwealth* v. *Savoy*, 21 Mass. App. Ct. 519, 521 (1986).

Hart drew the attention of two Woburn police officers on routine patrol because he was driving his car along Dragon Court, a road, without his headlights. A flash of their cruiser's headlights evoked no response from the defendant. When the police put on the roof-top flasher, Hart ducked into a parking lot that belonged to his employer, Chomerics, Inc., stopped his car and stepped out. The police followed and, after some questions, administered field sobriety tests which Hart dramatically failed.

Dragon Court, from its point of beginning and for a distance of 1,933 feet, is a public way, having been so laid out in 1852. It proceeds thereafter as a private way until, something in excess of 2,000 feet later, it comes to a dead end at Interstate Route 93. Physically, Dragon Court does not alter as it turns from a public to private way. It has an asphalt surface and some street illumination. Along the public stretch there are some houses and commercial uses. Three dead-end cross streets run off the public portion of Dragon Court. On both sides of the private portion of Dragon Court are various commercial buildings. No gate or sign marks the transition of Dragon Court from public to private way. Affixed to a utility pole located at the mouth of a driveway to the Chomerics building and parking lot there was a sign (a little bigger than a standard no parking sign which also adorned the pole) that read: "Private Property/Chomerics Employees and Authorized Persons Only." As the sign was oriented, it appeared to pertain to the

fenced-in Chomerics parking lot. Employees, customers, service personnel, vendors, deliverymen, and other callers with a business purpose used the private stretch of Dragon Court to reach their destinations. There was evidence that Chomerics maintained a gate on Dragon Court although it is not clear that the gate ever barred Dragon Court, as opposed to the entrance to Chomerics' fenced-in grounds. The point at which Hart was first observed by the police was well into the private portion of Dragon Court. His trip had begun from the Chomerics premises to which he made his retreat.

Prior to its amendment by St. 1961, c. 347, G. L. c. 90, § 24(1)(a)(1), made criminal the operation of a motor vehicle while under the influence of alcohol "upon any way or in any place to which the public has a *right* of access" (emphasis supplied). The quoted phrase was held to apply to property subject to a general public easement as of right, *Commonwealth* v. *Paccia*, 338 Mass. 4, 6 (1958). In that case the inebriated motorist had been apprehended on a private way which the public was in the habit of using. By reason of pains taken by the owner of the way to close it off occasionally, the public had acquired no prescriptive right. The defendant in *Paccia*, therefore, had not transgressed against the statute. If the coverage of the statute were to embrace areas "to which members of the public have access only as business invitees or licensees," the court remarked, that was legislative business. The Legislature responded to the invitation with St. 1961, c. 347, which, indeed, extended the reach of the drunk driving law to "any place to which members of the public have access as invitees or licensees."

The findings which the evidence warranted: intersecting streets, general use by the public, a broad category of business visitors, and only occasional closing off (if any) made Dragon Court at least as accessible to the public as Snell Place was in the *Paccia* case. Those characteristics of the way place it within the reach of the statute as amended in 1961. The instant case is particularly strong for the categorization of Dragon Court as a way within the scope of § 24(1)(a)(1) because there were a variety of business abutters along both sides of the private portion of the way. It is the status of the way, not the status

of the driver, which the statute defines (parenthetically, the defendant was an employee of Chomerics). No specific license or invitation need be granted to the particular driver charged with violating the statute, i.e., it is sufficient if the physical circumstances of the way are such that members of the public may reasonably conclude that it is open for travel to invitees or licensees of the abutters.

See as to indicia of accessibility to the public: *Danforth* v. *Durell*, 8 Allen 242, 244 (1864) (paved road, no signs that any person is to be excluded); *Commonwealth* v. *Mara*, 257 Mass. 198, 209 (1926) (street lights, paving, curbing, houses, crossroads, traffic); *Commonwealth* v. *Charland*, 338 Mass. 742, 744 (1959) (signs, signals, curbing, crossroads); *Commonwealth* v. *Colby*, 23 Mass. App. Ct. 1008, 1010 (1987) (paving, lighting, hydrants).

*Judgment affirmed.*[1]

---

[1] This opinion expresses the view of a majority of the panel.