COMMONWEALTH *vs.* DANA SMITHSON.

No. 96-P-618.

Barnstable. September 13, 1996. - October 31, 1996.

Present: WARNER, C.J., ARMSTRONG, & PERRETTA, JJ.

*Motor Vehicle,* Homicide, Operating to endanger. *Practice, Criminal,* Required finding. *Way,* Private. *Statute,* Construction.

In a criminal case, the judge's failure to promptly rule on the defendant's motion for a required finding of not guilty was not reversible error, where the evidence was sufficient to sustain the denial of the defendant's motion at the time the prosecution rested its case. [547-548]

Evidence at the trial of complaints for motor vehicle homicide and operating a motor vehicle so as to endanger was insufficient to establish that the way upon which the defendant had been driving, a gated road into a commercial gravel pit, was a way to which the public at that time had access as invitees or licensees: the defendant's motion for required findings of not guilty should have been allowed. [548-553]

COMPLAINT received and sworn to in the Orleans Division of the District Court Department on May 30, 1995.

The cases were heard by *W. James O'Neill,* J.

*Steven S. DeYoung* for the defendant.

*Linda A. Wagner,* Assistant District Attorney (*Peter Lloyd,* Assistant District Attorney, with her) for the Commonwealth.

WARNER, C.J. Following a bench trial in District Court, the defendant was convicted of motor vehicle homicide and operating a motor vehicle so as to endanger. G. L. c. 90, §§ 24, 24G. Both offenses are punishable as crimes only if they occur "upon any way or in any place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24(2)(*a*), as appearing in St. 1974, c. 418; G. L. c. 90, § 24G(*b*), as appearing in St. 1982, c. 373, § 9. The defendant contends that the evidence was insufficient to establish, beyond a reasonable doubt, that the road upon which he was driving at the time of the accident was a way to which the

public had access as invitees or licensees. He also argues that the judge's failure to rule on his motion for a required finding of not guilty at the close of the Commonwealth's evidence constitutes reversible error. We reverse.

The defendant was charged with motor vehicle homicide and operating to endanger after the automobile he was driving overturned, killing one of the passengers. The accident occurred on Memorial Day, May 29, 1995. During that weekend, a "pig roast" and party were held at Brewster Sand & Gravel, a privately owned sand and gravel pit-stump dump facility located in Brewster. Although the business was generally open to the public during the week, it was closed from noon on Saturday, May 27 through Monday, May 29, 1995, in observance of the Memorial Day holiday.

Brewster Sand & Gravel is located adjacent to Freeman's Way, a paved, public way in the town of Brewster. It consists of approximately sixty to seventy acres of land, and is in the business of selling sand and gravel and accepting certain types of brush and debris for dumping. There is a sand and gravel "haul road" leading from Freeman's Way to the main gate of Brewster Sand & Gravel, which is located approximately 100 feet from Freeman's Way. There is a sign posted on the fence connected to the gate which sets out the facility's business hours. There is also a utility pole with a halogen light affixed to the top.

Inside the gate, the road continues through the premises until it reaches a sand pit area, some 1,000 feet north of Freeman's Way. There are two fire hydrants along the road. A line of telephone poles runs parallel to it. Approximately 650 feet north of Freeman's Way, and directly beside the haul road, are a number of buildings grouped together, including a trailer which functions as the office for the facility, a storage garage, and a utility building. At the end of the road is the actual sand pit, or excavation area. It is on this haul road that the fatal accident occurred.

The Memorial Day "pig roast" was organized by an employee of Brewster Sand & Gravel, with the permission of the facility's owner. Over the course of the weekend, more than fifty guests attended the party; some actually camped out in the sand pit area at the rear of the property.

The organizers of the party had provided several "junk cars" for the purpose of "joyriding" on the grounds of the fa-

cility. These jalopies were delivered to Brewster Sand & Gravel on a ramp truck some time on Saturday, May 27. Over the course of the weekend, several of the party-goers drove them around the excavation area located at the rear of the property, and along the gravel haul road, doing "donuts" and "fishtailing" as they drove. One of the old cars was nicknamed the "Pit Taxi" and had that name written across its rear window. It did not have a windshield, hood, or seatbelts and had recently been damaged in a roll-over accident.

On Monday, May 29, the defendant was driving the "Pit Taxi." Three passengers, including the decedent, Brian Coulson, were in the car. The defendant was driving south on the gravel haul road, heading away from the sand pit area, when he lost control of the vehicle, spun 180 degrees, and flipped the car onto its right side. Brian Coulson was killed as a result of the accident. Although the record is somewhat imprecise as to the exact location of the vehicle when it overturned, it was clearly in the vicinity of the sand pit area, well beyond the main gate and past the trailer and utility buildings.

At trial, the Commonwealth presented several witnesses, including police Officers Gary Coffee and Richard Koch, William Grover, the owner of the facility, and Michael Escher and Don Viprino, both of whom had attended the pig roast. Numerous photographs of the scene were also introduced in evidence.

At the close of the Commonwealth's case, the defendant filed a motion for a required finding of not guilty pursuant to Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), on the grounds that the Commonwealth had failed to establish that the defendant was negligent, or that the road on which the defendant was driving on May 29, 1995, was a way "to which members of the public have access as invitees or licensees" within the meaning of the relevant statutes. See G. L. c. 90, §§ 24(2)(*a*), 24G(*b*). The trial judge denied the defendant's motion with respect to negligence, but reserved his ruling on the issue of public access. Defense counsel did not object, and subsequently presented his case. The defendant did not testify. At the close of the evidence, the judge denied the defendant's earlier motion and found him guilty on both charges.

The defendant argues on appeal that the judge's failure to rule on his motion for a required finding of not guilty at the

548         41 Mass. App. Ct. 545

Commonwealth *v.* Smithson.

close of the Commonwealth's case constitutes reversible error. The Commonwealth maintains that there was no error and that the defendant was not prejudiced in any event.

The language of rule 25(a) is unequivocal. It provides, in relevant part: "If a defendant's motion for a required finding of not guilty is made at the close of the Commonwealth's evidence, it shall be ruled upon at that time." In light of the explicit and mandatory language of the rule, the trial judge should have ruled on the motion at the time it was made. See *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 241 (1983), and cases cited. This error, however, does not necessarily warrant reversal of the defendant's conviction. *Id.* at 239-242. See also *Commonwealth* v. *Preston*, 393 Mass. 318, 321 n.2 (1984). If the evidence was sufficient to sustain the denial of the defendant's motion at the time the prosecution rested, any error in failing promptly to rule on the motion would be considered harmless. *United States* v. *Conway*, 632 F.2d 641, 643 (5th Cir. 1980). See *Commonwealth* v. *Preston*, 393 Mass. at 321 n.2; *Commonwealth* v. *Cote*, 15 Mass. App. Ct. at 241. Because we conclude that the road on which the accident occurred was not a way "to which members of the public [had] access as invitees or licensees," we need not determine whether the judge's untimely ruling would otherwise have constituted reversible error.

The defendant's second argument concerns the sufficiency of the evidence supporting the trial judge's denial of his motion for a required finding of not guilty. He argues that, as a matter of law, there was insufficient evidence to establish that the road on which he was driving was a way to which members of the public had access as invitees or licensees. Accordingly, he maintains that it was error for the judge to deny his motion.

At the close of the evidence, the judge concluded that the main gate to Brewster Sand & Gravel was open on Memorial Day, 1995. He also found that the road on which the defendant was operating was a way to which the public had a right of access, either as invitees or licensees. No formal findings of fact were made. After reviewing the record, we conclude that the judge's subsidiary finding regarding the position of the gate was supported by the evidence. See *Commonwealth* v. *Corriveau*, 396 Mass. 319, 326 (1985)(absent clear error, trial judge's subsidiary findings are accepted by the reviewing

court); *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 592 (1996). Next, we consider the judge's ultimate legal conclusions.

On the complete record before us, we are in as good a position as the judge to evaluate the strength of the defendant's claims with respect to the correct application of the law to the facts. See *Director of the Div. of Employment Security* v. *Mattapoisett*, 392 Mass. 858, 862 n.5 (1984). Thus, while we give substantial deference to the judge's ultimate findings, *Commonwealth* v. *MacNeill*, 399 Mass. 71, 76 (1987), his legal rulings and conclusions of law are subject to our independent review. *Ibid. Commonwealth* v. *Eagles*, 419 Mass. 825, 832 n.9 (1995). *Commonwealth* v. *Selby*, 420 Mass. 656, 657 (1995). *Commonwealth* v. *Chadwick*, 40 Mass. App. Ct. 425, 427-428 (1996). Here, the judge's conclusion, that the way on which the defendant was operating was accessible to the public as invitees or licensees, constitutes a legal conclusion rather than a factual finding. Cf. *Commonwealth* v. *Callahan*, 405 Mass. 200, 201 (1989). We, therefore, reexamine it independently.

In reviewing the denial of the defendant's motion, we consider the evidence in the light most favorable to the Commonwealth, notwithstanding any contrary evidence presented by the defendant, and determine whether it was sufficient to permit a rational trier of fact to conclude, beyond a reasonable doubt, that the road upon which the defendant was operating the "Pit Taxi" on May 29, 1995, was a way "to which members of the public have access as invitees or licensees." See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979); *Commonwealth* v. *Hart*, 26 Mass. App. Ct. 235, 236 (1988); *Commonwealth* v. *Muise*, 28 Mass. App. Ct. 964, 965 (1990). We hold that the evidence is insufficient to sustain the denial of the defendant's motion for a required finding of not guilty.

"It is the status of the way, not the status of the driver, which the statute defines." *Commonwealth* v. *Hart*, 26 Mass. App. Ct. at 237-238. Moreover, it is the objective appearance of the way that is determinative of its status, rather than the subjective intent of the property owner. See *ibid.* It is sufficient if "the physical circumstances of the way are such that members of the public may reasonably conclude that it is open for travel to invitees or licensees." *Ibid.* Some of the

usual indicia of accessibility to the public include paving, curbing, traffic signals, street lights, and abutting houses or businesses. See *Commonwealth* v. *Colby,* 23 Mass. App. Ct. 1008, 1010 (1987); *Commonwealth* v. *Hart,* 26 Mass. App. Ct. at 238; *Commonwealth* v. *Muise,* 28 Mass. App. Ct. at 965.

In this case, both parties appear to agree that during regular business hours, the haul road was "accessible to members of the public as invitees or licensees." The Commonwealth argues, however, that the status of the road was unchanged on Memorial Day, 1995, while the defendant maintains that the fact that the accident occurred on a holiday, when the facility was not open for business, negates any reasonable expectation of accessibility the public might have had during regular business hours.

In support of its position, the Commonwealth relies on the evidence adduced at trial, indicating that several "indicia of public accessibility" were present along the haul road. The Commonwealth presented evidence that the road was comprised of hard-packed gravel and was clearly distinguishable from the loose sand surrounding it. It was graded and level, approximately eighteen feet wide at its narrowest point. At the intersection of the haul road and Freeman's Way, there was a sign that read: "Brewster Industrial Park — Brewster Sand & Gravel — Loam & Seed, Stone and Blue Stone, Stumps and Brush." Moreover, there was a utility pole with a halogen light affixed to the top located just outside the main gate and a line of telephone poles running along the left side of the road. There were also two fire hydrants along the road. Finally, on May 29, 1995, there were no "no trespassing" signs visible to travelers on the road.

The Commonwealth argues that the above indicia were sufficient to create a reasonable expectation of accessibility among members of the public on May 29, 1995, regardless of the fact that the facility was closed for the Memorial Day holiday. Moreover, the Commonwealth suggests that the presence of a sign "advertising" the pig roast, which was visible to customers at Brewster Sand & Gravel during regular business hours, constituted some sort of public invitation to the party. Finally, the Commonwealth maintains that the judge's finding that the main gate into the facility was open on May 29 further supports a determination of public accessibility.

The defendant contends that none of the traditional indicia of public accessibility were evident inside the main gate to Brewster Sand & Gravel. Moreover, the road was uneven and irregular, and not intended to be used for any purpose other than access to the sand pit-excavation area. The defendant further argues that the fact that the facility is privately owned, had a gate at the entrance, and was, in fact, closed on Memorial Day, 1995, is indicative of the private nature of the gravel road. Finally, he claims that the pig roast was a private party, and as such, the sign should not be construed as having created any expectation of accessibility among members of the general public, but instead viewed merely as indicating the location of the party to those already invited.

It is not disputed that Brewster Sand & Gravel is a privately owned facility which was not open for business on May 29, 1995. The main gate, when closed, blocks the road into the facility. The position of the gate on May 29 was the subject of extensive testimony at trial. Ultimately, the trial judge concluded that the gate was open. While we accept the trial judge's finding, we do not think the position of the gate is dispositive regarding the status of the way.

The presence of a main gate entrance suggests to the public that the area beyond the gate is not accessible at all times. This is true whether the gate is open or closed. Moreover, a review of the photographs introduced at trial reveals that there is a section of chain link fencing directly to the left of the gate. Attached to the fence is a large sign which reads: "Business hours: Mon. - Fri. 7 A. M. - 4 P. M. Saturdays 7 A.M. - Noon." The sign is clearly visible from the road as one approaches the entrance, whether the gate is open or closed. Accordingly, anyone approaching the facility via the road would be alerted to the fact that Brewster Sand & Gravel was not open to the public seven days a week, twenty-four hours a day, but rather, only during generally accepted business hours for a business of its kind.

We conclude that the physical circumstances surrounding the gravel haul road running through Brewster Sand & Gravel on May 29, 1995, were not sufficient to create a reasonable expectation among members of the public that, on that particular day, they were welcome to drive through the main gate of the facility and continue along the gravel haul road some 650 feet, past the office and utility buildings and into

the sand pit area. The fact that the accident occurred on a Monday, albeit a holiday, does not alter our determination. One should reasonably anticipate that a business which was open only until noon on Saturdays and closed on Sundays, would also be closed on a national holiday such as Memorial Day. We hold, therefore, that the road was not a way "to which members of the public have access as invitees or licensees" within the meaning of the relevant statutes.

Our conclusion is consistent with prior decisions and supported by the legislative history of the laws governing the operation of motor vehicles within the Commonwealth. General Laws c. 90, §§ 1-34R, generally regulates motor vehicles and their operation. *Commonwealth* v. *George,* 406 Mass. 635, 638 (1990). Prior to its amendment by St. 1961, c. 347, G. L. c. 90, § 24(1)(*a*)(1), provided for punishment for operating a motor vehicle while under the influence of alcohol "upon any way or in any place to which the public has a right of access." See *Commonwealth* v. *Hart,* 26 Mass. App. Ct. at 237. The original version of the statute was "passed for the protection of travellers upon highways," *Commonwealth* v. *Clarke,* 254 Mass. 566, 568 (1926), and "was not intended to make criminal the use of a motor vehicle in all places within the Commonwealth." *Commonwealth* v. *Clancy,* 261 Mass. 345, 348 (1927). In *Commonwealth* v. *Paccia,* 338 Mass. 4, 6 (1958), G. L. c. 90, § 24(1)(*a*)(1), was narrowly construed as being applicable only to "property subject to any general public easement as of right." In response to *Paccia,* the Legislature expanded the scope of the statute to include "any place to which members of the public have access as invitees or licensees." *Commonwealth* v. *Hart,* 26 Mass. App. Ct. at 237. Identical language was subsequently inserted in G. L. c. 90, §§ 24(2)(*a*) & 24G(*b*), the operative provisions in this case, in an attempt to "address the problem of accidents in . . . 'public parking lots or chain store parking lots.'" *Commonwealth* v. *Callahan,* 405 Mass. at 205, quoting from a letter of Deputy Registrar of Motor Vehicles E. Theodore Gunaris to Governor Endicott Peabody, March 18, 1964, included in the legislative package for St. 1964, c. 200, on file at the Massachusetts Archives.

"[I]t is far from clear that the Legislature contemplated the application of § 24G(*b*) and § 24(2)(*a*) to a situation like the instant one." *Id.* at 205. Moreover, where there is any ambi-

guity, a criminal statute must be construed "strictly against the Commonwealth." *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984). *Commonwealth* v. *Callahan*, 405 Mass. at 205. We therefore conclude that the defendant's actions on May 29, 1995, did not offend the provisions of G. L. c. 90, §§ 24, 24G. Accordingly, his motion for a required finding of not guilty should have been allowed.

The judgments are reversed, the findings set aside, and judgments are to enter for the defendant.

*So ordered.*