## Commonwealth *vs.* Attila Kiss.

No. 02-P-1013.

Essex. June 3, 2003. - September 9, 2003.

Present: Armstrong, C.J., Smith, & Duffly, JJ.

*Motor Vehicle,* Operating under the influence. *Statute,* Construction. *Public Policy.*

A so-called "strip mall" parking lot that, even during the hours that the mall shops were closed, contained services such as an automated bank teller machine, pay telephones, and newspaper distribution boxes, which could be used without the presence of a banker or storekeeper, was a way "to which the members of the public have access as invitees or licensees" within the scope of G. L. c. 90, § 24(1)(*a*)(1), with respect to the operation of motor vehicles by persons while under the influence of intoxicating liquor, where the presence of such services created the reasonable expectation among members of the public that they were welcome to operate their vehicles in the parking lot in order to access those services that were uniquely available when the shops were closed. [248-250]

This court declined to adopt, as a matter of public policy, a "shelter defense" that would prevent a person from being punished for the crime of operating a motor vehicle while under the influence of drugs or alcohol if, once the operator feels the effect of the drugs or alcohol, he or she removes the vehicle from the roadway. [250-251]

Complaint received and sworn to in the Lawrence Division of the District Court Department on December 18, 2000.

The case was tried before *Ellen Flatley*, J.

*Stephen L. Jones* (*James M. Milligan, Jr.*, with him) for the defendant.

*Catherine Langevin Semel*, Assistant District Attorney, for the Commonwealth.

Smith, J. The defendant was tried by a jury of six in the Lawrence District Court on a complaint charging him with operating a motor vehicle while under the influence of alcohol. At the conclusion of the Commonwealth's evidence, the

defendant filed a motion for a required finding of not guilty, which was denied. The jury subsequently returned a guilty verdict on the complaint.

On appeal, the defendant claims error in denying his motion for a required finding of not guilty. He also requests that we adopt a "shelter defense" for those persons who, while operating a motor vehicle after consuming alcohol, stop their motor vehicles because they feel the effect of the alcohol.

1. *The denial of the motion for a required finding of not guilty.* The defendant argues that the Commonwealth introduced insufficient evidence to demonstrate that the defendant had operated his motor vehicle on a way "to which the members of the public have access as invitees or licensees." G. L. c. 90, § 24(1)(*a*)(1), first par., as appearing in St. 1994, c. 25, § 3.

We examine the evidence introduced at trial, in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). On December 17, 2000, at 1:48 A.M., North Andover Officer William Brush drove into the North Andover shopping mall, while conducting a routine check. As Brush entered the parking lot, his attention was drawn to an automobile located in a parking space in front of Payless Shoes, a store which was closed. The motor was running, and the driver, who was later identified as the defendant, appeared to be sleeping or passed out. After engaging the defendant in a conversation and administering field sobriety tests, which the defendant failed, Brush arrested the defendant for operating a motor vehicle while under the influence of alcohol.

The defendant argues that because the stores in the shopping mall were closed, the parking lot was not a way to which the public had access as invitees or licensees.

The record discloses that the North Andover shopping mall was a strip mall, in contrast to an enclosed mall where the stores inside the mall are not usually evident from the outside. The stores in this mall were opened daily and included a bank with an automated teller machine (ATM), several pay telephones, and newspaper distribution boxes. The stores themselves were closed at the time of the defendant's arrest, and there were no

vehicles parked in the parking lot, except for the defendant's car.[1] The lights were off in the parking lot.

The trial judge ruled, in denying the defendant's motion for a required finding of not guilty, that even if all the stores in the mall were closed, there were other amenities available to the general public after the stores' closing hours, such as the ATM machine, pay telephones, and newspaper distribution boxes. Therefore, the judge held that at the time the defendant was arrested, the parking lot at the mall was a place to which the public had access as invitees or licensees.

Prior to 1961, G. L. c. 90, § 24(1)(*a*), criminalized operation of a motor vehicle upon a way or place "to which the public has a right of access." See G. L. c. 90, § 24(1)(*a*), as appearing in St. 1938, c. 145. In *Commonwealth* v. *Paccia*, 338 Mass. 4, 6 (1958), the court ruled that the statute did not apply to a privately owned, paved roadway, sometimes used by the public between two public ways and by customers visiting abutting businesses.

In 1961, the Legislature amended the statute to include also "any way or in any place to which members of the public have access as invitees or licensees."[2] St. 1961, c. 347. The amendment was apparently directed toward those persons operating a motor vehicle while under the influence of alcohol in places "such as public parking lots or chain store parking lots." *Commonwealth* v. *Callahan*, 405 Mass. 200, 205 (1989) (quoting from letter written by the then Deputy Registrar of Motor Vehicles to the Governor, regarding the same change in the wording of G. L. c. 90, § 24[2][*a*]), by St. 1964, c. 200). See *Commonwealth* v. *Hart*, 26 Mass. App. Ct. 235, 237-238 (1988).

In deciding whether a particular place is included within the amendment, decisional law has outlined pertinent considerations. For example, "[i]t is the status of the way, not the status of the driver, which the statute defines . . . ." *Commonwealth* v. *Hart*, 26 Mass. App. Ct. at 237-238. In addition, it is the objective appearance of the way that is determinative of its status, rather than the subjective intent of the property owner. See *Com-*

---

[1]Officer Brush described the parking lot as a "private way," but it is clear from his testimony that the public had access to the parking lot.

[2]This language remains in the current statutory scheme. See G. L. c. 90, § 24(1)(*a*)(1), first par., as appearing in St. 1994, c. 25, § 3.

*monwealth* v. *Smithson*, 41 Mass. App. Ct. 545, 549 (1996). Finally, if the "physical circumstances of the way are such that members of the public may reasonably conclude that it is open for travel to invitees or licensees," this element of the statute is satisfied. *Commonwealth* v. *Hart*, 26 Mass. App. Ct. at 238. Some of the usual indicia of accessibility to the public include a paved road, the absence of signs prohibiting the public from access to the road, and street lights, curbing, houses, crossroads, and traffic. See *Commonwealth* v. *Muise*, 28 Mass. App. Ct. 964 (1990). See also *Commonwealth* v. *Mara*, 257 Mass. 198, 208-209 (1926).

The characteristics of the North Andover shopping mall parking lot, even during the hours that the mall shops are closed, place the parking lot within reach of G. L. c. 90, § 24, as amended by St. 1961, c. 347. While the use of the parking lot after closing hours would be significantly diminished, there were services at the mall, such as pay telephones and newspaper distribution boxes, which could be used without the presence of a storekeeper. There was no suggestion that the ATM machine was not available. Thus, their presence created the reasonable expectation among members of the public that they were welcome to operate their vehicles in the parking lot in order to access those services that were uniquely available when the shops were closed. See *Commonwealth* v. *Hart*, 26 Mass. App. Ct. at 237 (presence of businesses along the side of private way support its inclusion within scope of the drunk-driving statute).

2. *Public policy and the "shelter defense."* The defendant argues for the first time on appeal that as a matter of public policy, a person should not be punished for the crime of operating a motor vehicle while under the influence of alcohol if, once the operator feels the effect of alcohol, he or she removes the vehicle from the roadway. Thus, the defendant requests that we adopt a "shelter defense" for individuals who stop their vehicles because they think they are under the influence of alcohol or drugs.

We realize that at least one jurisdiction, Arizona, recognizes a limited type of "shelter defense." See *State* v. *Love*, 182 Ariz. 324, 326-327 (1995). See also *Atkinson* v. *State*, 331 Md. 199, 212-218 (1992). However, we agree with other jurisdictions

which reject the "shelter defense" and hold that a better policy is for a person who drinks alcohol to anticipate and ascertain his or her ability to operate a motor vehicle before attempting to do so. See *Naperville* v. *Watson*, 175 Ill. 2d 399, 404-405 (1997); *State* v. *Peterson*, 236 Mont. 247, 251 (1989). See also *Richfield City* v. *Walker*, 790 P.2d 87, 93 (Utah 1990) ("shelter defense" is province of Legislature).

*Judgment affirmed.*