## Commonwealth *vs.* Brian A. Stoddard.

No. 08-P-1256.

Essex. March 11, 2009. - April 30, 2009.

Present: McHugh, Green, & Fecteau, JJ.

*Motor Vehicle,* Operating under the influence. *Way,* Public: what constitutes.

At the trial of a criminal complaint charging the defendant with operating a
    motor vehicle while under the influence of intoxicating liquor, the evidence
    was insufficient to demonstrate that the defendant did so upon a way or in
    a place to which the public has a right of access, or upon a way or in a
    place to which members of the public have access as invitees or licensees,
    where the defendant operated a motor vehicle on the roadways of a
    campground that had a gate that severely restricted general access to the
    campground, and where members of the general public, although invited to
    become licensees of the campground, were not allowed into the campground
    until they had acquired a license. [180-184]

COMPLAINT received and sworn to in the Newburyport Division of the District Court Department on July 2, 2007.

The case was tried before *Allen G. Swan,* J.

*Sean J. Gallagher* for the defendant.

*Kenneth Bresler,* Assistant District Attorney, for the Commonwealth.

GREEN, J. The defendant does not dispute that he was intoxicated at the time of his arrest on the grounds of a campground on the night of June 30, 2007, and that he operated a motor vehicle on the roadways of the campground immediately before his arrest. On appeal, as in his motion at trial for a required finding of not guilty, he contends that the way on which he was operating the vehicle is not within the reach of G. L. c. 90, § 24(1)(*a*)(1).[1] We agree, and reverse the conviction.

_____

[1] The statute makes criminal the operation of a motor vehicle while under the influence of intoxicating liquor (or other specified substances not relevant

*Facts.* The essential facts are not in dispute. Rusnik Camp-ground (campground) is a privately owned campground in Salis-bury, containing slightly fewer than two hundred campsites. The campground is seasonal, opening on May 15 and closing on Columbus Day each year. The defendant was a seasonal camper at the campground (meaning that he rented a site for the entire season). Late on the night of June 30, 2007, while intoxicated, the defendant operated a motor vehicle on one of the roadways within the campground.[2]

There is a gate at the only entrance to the campground, barring entrance into the grounds. The gate may be opened by inserting a "gate card" into a control box. Gate cards are issued to registered campers. With the use of a gate card, such campers may come and go as they please. Noncampers who wish to enter the grounds must present themselves to the campground office (housed in a trailer at the campground entrance) and furnish an explanation for their presence. Upon a satisfactory explanation, such visitors are also issued gate cards. Visitors are not allowed after 10:00 P.M. The campground owner reserves the right to "program out" a particular access card at any time.

A network of roadways provides access to campsites within the grounds beyond the gate. The ways are not paved, but are covered with "three quarter stone." There are no curbs, con-ventional street signs or streetlights, and no hydrants.[3] Accord-ing to the testimony of the campground's owner, the speed limit on the ways is five miles per hour.[4]

*Discussion.* Prior to its amendment by St. 1961, c. 347, G. L. c. 90, § 24(1)(*a*)(1), applied only to operation of a motor vehicle "upon any way or in any place to which the public has a right of access." In *Commonwealth* v. *Paccia,* 338 Mass. 4, 6 (1958),

---

here) "upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24(1)(*a*)(1), as appearing in St. 1994, c. 25, § 3.

[2] A breathalyzer test revealed that the defendant's blood alcohol level was .19 percent.

[3] Pipes conduct water to each campsite, and each campsite is marked by a wooden post.

[4] The record does not reflect whether the speed limit is posted by any form of signage.

the Supreme Judicial Court construed that language to encompass only ways in which the general public held an easement, and not private ways used by the public merely as licensees or business invitees.

At issue in *Paccia* were a black-topped road called Snell Place, which ran between two main thoroughfares, and an adjacent parking lot, both of which were owned by a woman named Reynolds. The court described Snell Place as follows:

> "Snell Place has been owned by the Reynolds family for some years. The black top surface was laid about three years ago. Within the past twenty years Snell Place has been blocked off several times to prevent the passage of vehicles entering from South Main Street and the establishment of prescriptive rights. Mrs. Reynolds has also removed on several occasions city of Brockton signs saying 'Snell Place.' No taking of the place by eminent domain proceedings by any public body has ever been made. It is possible for vehicles to pass over the portion of Snell Place owned by Mrs. Reynolds from South Main Street to her eastern boundary, and then to continue east across an unsurfaced roadway to Montello Street. Such passing does take place from time to time and nothing is done to prevent it."

*Id.* at 5. In holding that the statute as it then existed applied neither to Snell Road nor to the parking lot, the court said that "[i]f the Legislature had wished to include areas like Mrs. Reynolds's portion of Snell Place, to which members of the public have access only as business invitees or licensees, within the penal prohibitions of § 24, it would have been appropriate for it to have made a clear and specific provision to this effect." *Id.* at 6.

In response, the Legislature indeed amended the statute to encompass, in addition, "any place to which members of the public have access as invitees or licensees." See St. 1961, c. 347; *Commonwealth* v. *Callahan*, 405 Mass. 200, 203 (1989). The scope of the expanded language has been the subject of several subsequent opinions.

In assessing whether a particular private way falls within the statute, "[i]t is the status of the way, not the status of the driver, which the statute defines . . . , i.e., it is sufficient if the physical

circumstances of the way are such that members of the public may reasonably conclude that it is open for travel to invitees or licensees." *Commonwealth* v. *Hart*, 26 Mass. App. Ct. 235, 237-238 (1988). Accordingly, an individual may be held in violation of the statute even if his presence on the way is without benefit of a specific license or invitation. See *ibid*; *Commonwealth* v. *Brown*, 51 Mass. App. Ct. 702, 712-713 (2001). Whether a particular way is accessible to the public as invitees or licensees, within the meaning of the statute, is a legal conclusion which we consider independently. See *Commonwealth* v. *Smithson*, 41 Mass. App. Ct. 545, 549 (1996); *Commonwealth* v. *Brown*, *supra* at 709-710.

A variety of factors bears on the question whether a way is accessible to the public within the meaning of the statute. Several cases have commented on the presence of street lights, hydrants, curbing, and paving as relevant to the determination. See, e.g., *Commonwealth* v. *George*, 406 Mass. 635, 639 (1990); *Commonwealth* v. *Hart*, *supra* at 238; *Commonwealth* v. *Muise*, 28 Mass. App. Ct. 964, 965 (1990); *Commonwealth* v. *Smithson*, *supra* at 549-550; *Commonwealth* v. *Brown*, *supra* at 710-711; *Commonwealth* v. *Kiss*, 59 Mass. App. Ct. 247, 250 (2003). However, the absence of curbing, hydrants, or streetlights is not dispositive. See, e.g., *Commonwealth* v. *Muise*, *supra* at 965-966 (paved private road without curbing furnishing access to trailer park covered by statute); *Commonwealth* v. *Smithson*, *supra* (unpaved way furnishing access to business not covered by statute during weekend when business not open, but strongly implying it would be covered during business operating hours); *Commonwealth* v. *Kiss*, *supra* (shopping center parking lot covered by statute).[5]

In our view, the emphasis in the decided cases on the physical characteristics of the way appears designed to ascertain, in turn, the nature of the invitation or license extended for its use. The essential question under the statute is whether the way is available for public use, whether as a public way or by license or invitation. If the invitation or license is one that extends (or appears, from the character of the way, to extend) to the general

---

[5]Indeed, even public roadways in many rural communities lack lighting, curbing, and hydrants.

public, the way is covered; if instead the license or invitation is privately extended to a limited class, the way is not covered.

Returning to the facts of the present case, the presence of a gate severely restricting general access to the campground is of great significance. The evidence established that no motorist approaching the entrance to the campground could suffer any illusion that he was welcome to enter the campground and drive on its roadways. The fact that the campground solicits business from the general public does not alter the equation; though members of the general public are invited to become licensees of the campground, they are not allowed into the campground unless or until they have acquired such a license. Even more than the fact of that limitation, the gate makes its reality abundantly clear to any putative visitor. An evident limitation of far less significant scope was determinative of the question in *Commonwealth* v. *Smithson, supra* at 551, in which the entrance gate was open and a large sign announced the operating hours of the business. In the present case, registered campers and their guests have access to the ways within the campground, but members of the public who have not acquired that status do not.

We are unpersuaded by the Commonwealth's suggestion that such a conclusion would exclude from the statute's reach toll roads, or parking lots employing ticket-dispensing gates at their entrances.[6] It is not the requirement that patrons pay for use of the facility that matters in the present case, but the exclusion of the general public. By plainly restricting access of the general public to the campground, the owner has made it clear to all visitors that it is a private facility, accessible only to a limited class of persons, and not the general public.

We recognize that our conclusion may call into question whether the statute covers roadways within private "gated communities," gated private resorts, or even some college campuses, to the extent they restrict or bar access by the general public.[7] But if that is so it is because the statute by its terms is directed only to ways accessible to the public. We will not treat as super-

---

[6]Public toll roads such as the Massachusetts Turnpike, and publicly owned parking facilities, are of course unquestionably "ways to which the public has a right of access."

[7]We express no view on the question in any such hypothetical case.

fluous words of limitation the Legislature has included in a statute, or add words to a statute beyond those the Legislature has chosen to include.[8] See *Boone* v. *Commerce Ins. Co.*, 451 Mass. 192, 197, 199 (2008).

The judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.

*So ordered.*

---

[8]We note that a Pennsylvania statute directed to disorderly conduct, construed in a case cited in the Commonwealth's brief to apply within a gated community, defines "public" to mean "affecting or likely to affect persons in a place to which the public *or a substantial group* has access" (emphasis added). *Commonwealth* v. *Whritenour*, 751 A.2d 687, 688 (Pa. Super. 2000), quoting from 18 Pa. Cons. Stat. Ann. § 5503(*c*).