STATE OF NEBRASKA, APPELLEE, V.
SHAWN PRATER, APPELLANT.
686 N.W.2d 896

Filed September 24, 2004.   No. S-03-1161.

Casey J. Quinn for appellant.

Paul D. Kratz, Omaha City Attorney, Martin J. Conboy III,
Omaha City Prosecutor, and J. Michael Tesar for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN,
MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Shawn Prater appeals from a judgment of the Douglas County
District Court, which affirmed the judgment of the Douglas
County Court finding Prater guilty of driving while under the
influence (DUI), in violation of an Omaha city ordinance.

## SCOPE OF REVIEW

In the absence of anything to the contrary, statutory lan-
guage is to be given its plain and ordinary meaning; an appellate
court will not resort to interpretation to ascertain the meaning
of statutory words which are plain, direct, and unambiguous.
*Brunken v. Board of Trustees*, 261 Neb. 626, 624 N.W.2d 629
(2001). When analyzing a municipal ordinance, this court follows
the same rule.

## FACTS

At about 2:30 a.m. on August 26, 2001, Omaha police officers
were called by a resident of an apartment complex who reported

a man trying to break into her car in the parking lot. While investigating the possible break-in, Officer Tom Rummel observed Prater slumped over in the driver's seat of a different car. The car's engine was running. Rummel's partner tapped on the car window, but Prater did not respond. Rummel testified that Prater had "spill coming from his mouth down onto the floor." When Prater began to respond, Rummel reached into the car and took the keys from the ignition while his partner asked Prater to step out of the car and provide identification and registration. Prater appeared to have been drinking and showed signs of impairment. Prater was arrested and transported to police headquarters, where he was given an Intoxilyzer test.

A city complaint was filed in Douglas County Court charging Prater with violating Omaha Municipal Code (OMC), ch. 36, art. III, § 36-115 (1998) by unlawfully operating or being in actual physical control of a motor vehicle while under the influence. Prater stipulated that the Intoxilyzer test was completed in accordance with statutory requirements and that the results indicated that his breath alcohol level was .171.

The apartment complex where Prater was arrested is made up of four 12-unit buildings. There are no gates or fences surrounding the property. A sign posted near the parking lot states: "Private parking[.] Unauthorized vehicles will be towed at owners expense." Guests of apartment residents are allowed to park in the lot and are not required to sign in. Maintenance persons also park in the lot.

The county court found Prater guilty of DUI, first offense, and placed him on supervised probation for 365 days. Prater was ordered to pay a fine of $400 and not to drive for 60 days.

Prater appealed to the Douglas County District Court, which affirmed. The district court concluded that OMC § 36-115 was parallel to Neb. Rev. Stat. § 60-6,108 (Reissue 1998), the latter of which provides that the DUI statute "shall apply upon highways and anywhere throughout the state *except private property which is not open to public access*." (Emphasis supplied.) The district court agreed with the county court that the area where Prater was arrested was open to public access even though it was not open to public parking. It concluded that the facts presented at trial established that the private parking lot was open to public

access and that OMC § 36-115 applied to the parking lot. The district court found that the guilty verdict was supported by competent evidence. Prater appeals.

## ASSIGNMENT OF ERROR

Prater assigns six errors, which can be summarized to assert that the lower courts committed reversible error in interpreting OMC § 36-115 to apply to the private parking lot in question.

## ANALYSIS

The applicable version of OMC § 36-115 stated:

It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor . . . .

. . . .

(c) The provisions of this section shall apply *anywhere throughout the city except private property which is not open to public access.*

(Emphasis supplied.)

The ordinance is similar to § 60-6,108, which states in part:

(1) The provisions of the Nebraska Rules of the Road relating to operation of vehicles refer exclusively to operation of vehicles upon highways except where a different place is specifically referred to in a given section, but sections 60-6,196, 60-6,197, and 60-6,212 to 60-6,218 shall apply upon highways and *anywhere throughout the state except private property which is not open to public access.*

(Emphasis supplied.)

When analyzing a municipal ordinance, this court follows the same rules applied to statutory analysis. See *Brunken v. Board of Trustees*, 261 Neb. 626, 624 N.W.2d 629 (2001). The court first looks to the language of the ordinance. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Id.*

The word "access" is defined as "permission, liberty, or ability to enter, approach . . . or pass to and from," "a way by which a thing or place may be approached or reached," and "the action

of going to or reaching . . . passage to and from." Webster's Third New International Dictionary of the English Language, Unabridged 11 (1993). Thus, the phrase "open to public access" means that the public has permission or the ability to enter.

Whether OMC § 36-115 applies to the case at bar is primarily a question of fact. A sign on the property stated: "Private parking[.] Unauthorized vehicles will be towed at owners expense." Although the parking lot was private property intended for use by residents of the apartment complex, there is no indication that the public was not allowed to enter the lot or was prohibited from using the lot under any circumstances. Testimony established that the lot was used by guests of residents, as well as by delivery persons and maintenance workers. The lower courts found, based upon the facts presented, that " 'the area where the defendant was arrested was open to public access even though it was not open to public parking.' "

Other jurisdictions have considered whether DUI statutes applied to private property. In Pennsylvania, the Superior Court held that a club parking lot was a trafficway for purposes of the DUI statute. *Com. v. Wilson*, 381 Pa. Super. 253, 553 A.2d 452 (1989). Although a sign indicated that the parking lot was private, the court found that if a parking lot is used by members of the public, it is a trafficway for purposes of the DUI statute.

The defendant, who was belligerent and appeared to be intoxicated, was removed from the Elks Club after a disturbance. He began to walk home, but then returned to the club's parking lot, got into a car, started it, and began to leave the lot. He was arrested, and a blood alcohol test determined that he was intoxicated. After he was convicted, the defendant argued on appeal that his offense was not committed on a highway or a trafficway.

Under Pennsylvania law, a trafficway was defined as " 'the entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom.' " *Id.* at 255, 553 A.2d at 453, quoting 75 Pa. Cons. Stat. Ann. § 102. The Superior Court affirmed the conviction, stating:

> It would raise form to towering levels above substance if parking lots, in which vehicular traffic is encouraged and occurs, sometimes at high rates of speed, were to become

"D[U]I-free zones," in which drunk driving is tolerated from entrance to exit. Such a construction would seriously undermine the effectiveness of any drunk driving prohibitions.

*Wilson*, 381 Pa. Super. at 257, 553 A.2d at 454.

In *People v Hawkins*, 181 Mich. App. 393, 448 N.W.2d 858 (1989), the Michigan Court of Appeals concluded that a shopping center parking lot was open to the public and that a driver arrested there could be convicted of DUI. The state statute in that case provided that a person could be charged with DUI if operating a vehicle " 'upon a highway or other place open to the general public, including an area designated for the parking of vehicles, within the state.' " *Id.* at 396, 448 N.W.2d at 860. The court noted that the statute's language focused on whether the area was accessible to the public and that a shopping center parking lot was open to the public if there were no barriers to public access.

The Massachusetts DUI statute was found to apply to operation of a vehicle " 'upon any way or in any place to which members of the public have access as invitees or licensees' " in *Com. v. Hart*, 26 Mass. App. 235, 525 N.E.2d 1345, 1346 (1988), citing Mass. Gen. Laws ch. 90, § 24(1)(*a*)(1). The driver in that case was observed driving on a road without the aid of headlights. He pulled into a parking lot that belonged to his employer, stopped the car, and stepped out. A sign at the entrance to the lot stated: " 'Private Property/Chomerics Employees and Authorized Persons Only.' " *Hart*, 26 Mass. App. at 236, 525 N.E.2d at 1346. The court stated:

> It is the status of the way, not the status of the driver, which the statute defines . . . . No specific license or invitation need be granted to the particular driver charged with violating the statute, i.e., it is sufficient if the physical circumstances of the way are such that members of the public may reasonably conclude that it is open for travel to invitees or licensees of the abutters.

*Id.* at 237-38, 525 N.E.2d at 1347.

In *State v. Thomas*, 420 N.W.2d 747, 753 (N.D. 1988), the North Dakota law provided that DUI was a violation if a person drove or was in actual physical control " 'of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state . . . .' " The

defendant pulled off the highway into the parking lot of a private gun club, of which he was a member. The court affirmed his conviction for DUI, finding that the parking lot was an area to which the public had a right of access for vehicular use. The court stated that the purpose of the DUI statute was to deter intoxicated persons from getting into a vehicle; except as a passenger. The statute was intended to "protect the public against the real danger caused by drunken drivers whether on the highway, a parking lot or elsewhere within the State." *Id.* at 753-54.

As other courts have noted, law enforcement should not be required to wait for a driver to enter a public highway before stopping the driver to determine whether he or she is impaired. Public safety requires that DUI statutes and ordinances apply to any property to which the public has access. The purpose of these laws is to protect the public—not to provide a safe harbor for the intoxicated driver in a private parking lot.

We conclude that under the facts of this case, the lower courts did not err in finding that the city ordinance applied to the parking lot, and we find that the evidence supports Prater's conviction for DUI in violation of the ordinance.

## CONCLUSION

Based upon the facts presented, the district court correctly found no error on the part of the county court, which properly determined that the parking lot in question was open to public access. Prater's conviction for DUI in violation of OMC § 36-115 is supported by sufficient evidence, and the judgment of the district court is affirmed.

AFFIRMED.