State of Nebraska, appellee, v.
Daniel D. Matit, also known
as Yai Bol, appellant.
___ N.W.2d ___

Filed May 16, 2014.    No. S-13-318.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, the appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that the appellate court reviews independently of the trial court's determination.

2. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

4. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government.

5. **Arrests: Search and Seizure: Probable Cause: Words and Phrases.** An arrest is a highly intrusive detention (seizure) of a person that must be justified by probable cause.

6. **Warrantless Searches: Probable Cause: Police Officers and Sheriffs.** Probable cause to support a warrantless arrest exists only if the officer has knowledge at the time of the arrest, based on information that is reasonably trustworthy under the circumstances, that would cause a reasonably cautious person to believe that a suspect has committed or is committing a crime.

7. **Probable Cause: Words and Phrases.** Probable cause is a flexible, common-sense standard that depends on the totality of the circumstances.

8. **Probable Cause: Police Officers and Sheriffs.** Probable cause is not defeated because an officer incorrectly believes that a crime has been or is being committed. But implicit in the probable cause standard is the requirement that a law enforcement officer's mistakes be reasonable.

9. **Probable Cause: Appeal and Error.** An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.

10. **Drunk Driving: Circumstantial Evidence.** Circumstantial evidence may serve to establish the operation of a motor vehicle for purposes of Nebraska's driving under the influence statutes.

11. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

12. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, Jennifer Houlden, and, on brief, Elizabeth D. Elliott, and Claire K. Bazata, Senior Certified Law Student, for appellant.

Jon Bruning, Attorney General, George R. Love, and Joel R. Rische, Senior Certified Law Student, for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

Daniel D. Matit, also known as Yai Bol, was charged with and convicted of fourth-offense driving while under the influence (DUI). Matit was sentenced to a term of imprisonment of 2 to 3 years and his driver's license was revoked for 15 years. He appeals his conviction and sentence. Finding no reversible error, we affirm.

## BACKGROUND

At approximately 1 a.m. on March 5, 2012, Sgt. Benjamin Miller of the Lincoln Police Department was conducting surveillance in a marked police car in the area of 13th and E Streets in Lincoln, Nebraska. Miller's car was parked about 1½ blocks east of an apartment complex he was watching. Miller saw a vehicle parked on a concrete drive between the street

and the sidewalk in what Miller referred to as "the city right of way" in front of the apartment complex. At various times, he saw people approach the vehicle.

On five separate occasions, Miller observed the taillights of the vehicle come on and saw exhaust coming from the tailpipe, making him believe the vehicle had been started, as if to drive away. Each time, the vehicle's engine stayed on for a few minutes, but the vehicle did not move. Miller also saw a person who had been seated in the driver's seat exit the vehicle, urinate on a nearby tree, and then return to the vehicle.

Based on his observations, Miller made contact with the person in the vehicle, who provided identification demonstrating that he was Matit. Miller later learned that Matit also uses the name "Yai Bol" and that the vehicle was registered to Bol. Miller noticed that Matit's eyes were bloodshot and watery and that there was a strong odor of alcoholic beverage about Matit's person. In addition, Matit's speech was slurred and his dexterity was poor. Miller asked Matit to get out of the car, and when Matit did not cooperate, Miller opened the door and helped him out of the vehicle. As they approached Miller's police car, Miller noticed that Matit stumbled and staggered. Miller administered the horizontal gaze nystagmus test to Matit and observed impairment. Miller did not ask Matit to complete additional standardized field sobriety tests, because Matit was uncooperative and Miller was concerned about safety. Miller asked Matit to take a preliminary breath test. Matit refused, and Miller transported him to a detoxification center. After Matit was placed under arrest, he provided a breath sample. The test showed Matit's blood alcohol level was .216.

Matit was charged by information in Lancaster County District Court with DUI, over .15 concentration, and three prior convictions. One of the prior offenses was alleged to have occurred in Hall County, Nebraska, and the other two were alleged to have occurred in Vermont.

Matit filed a motion to suppress in which he asserted that police "lacked probable cause to contact, stop, detain, and/or arrest" him. He generally argued that Miller was not justified

in pursuing a DUI investigation after contacting him, because he was parked on private property. After conducting a suppression hearing, the district court entered an order denying the motion. The court found that Matit's vehicle was "parked in virtually the middle of that portion of the concrete drive located between the street and the sidewalk (i.e., in the public right-of-way), facing towards the courtyard of the apartment complex." After considering this court's decisions in *State v. Prater*[1] and *State v. McCave*[2] the court reasoned that whether the concrete drive was open to public access was a fact question to be addressed by the jury, thus implicitly finding that Miller's belief the drive was open to public access was reasonable.

The case proceeded to trial, at which Miller testified as a witness for the State as summarized above, and Matit testified in his own behalf. Matit acknowledged that he also uses the name "Yai Bol." He testified that on March 5, 2012, he visited a friend at the 13th and E Streets location and remembered sitting in the vehicle in the drive, but he did not remember starting the vehicle. He said the vehicle was never moved while he was there. He was drinking beer that night, starting at 11 p.m. while at a friend's house. Although he admitted he was intoxicated, Matit denied drinking any alcohol in the car. He also denied urinating on a tree.

The jury found Matit guilty of DUI with a concentration of more than .15 of 1 gram or more by weight of alcohol per 210 liters of his breath at the time he was operating or in the actual physical control of a motor vehicle. After an enhancement hearing, the court entered an order finding Matit had two prior convictions for DUI, making the current conviction a third offense. Four days later, the court entered an order "nunc pro tunc," finding that Matit had three prior convictions for DUI, making the current conviction a fourth offense. Matit was sentenced to a term of 2 to 3 years in prison, to be served consecutively to his sentences in another case, and

---

[1] *State v. Prater*, 268 Neb. 655, 686 N.W.2d 896 (2004).

[2] *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

his driver's license was revoked for 15 years. He filed this timely appeal.

## ASSIGNMENTS OF ERROR

Matit assigns, restated, (1) that the district court erred in overruling his motion to suppress for lack of probable cause to arrest because his vehicle was on private property not open to public access, (2) that the evidence was insufficient to support his conviction, (3) that the district court erred in ruling that two prior convictions could be used for sentence enhancement, (4) that the district court erred in issuing an order nunc pro tunc which changed the number of prior convictions from two to three, and (5) that the district court abused its discretion by imposing an excessive sentence.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination.[3]

[2] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

[3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[5]

---

[3] *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013).

[4] *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

[5] *State v. Sikes*, 286 Neb. 38, 834 N.W.2d 609 (2013).

## ANALYSIS

### PROBABLE CAUSE FOR ARREST

Nebraska's DUI statutes do not apply to operation or control of a vehicle on private property that is not open to public access.[6] Matit contends that Miller lacked probable cause to arrest him because his vehicle was parked on private property that was not open to public access at all relevant times.

[4-6] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government.[7] An arrest is a highly intrusive detention (seizure) of a person that must be justified by probable cause.[8] Probable cause to support a warrantless arrest exists only if the officer has knowledge at the time of the arrest, based on information that is reasonably trustworthy under the circumstances, that would cause a reasonably cautious person to believe that a suspect has committed or is committing a crime.[9]

[7-9] Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances.[10] Probable cause is not defeated because an officer incorrectly believes that a crime has been or is being committed.[11] But implicit in the probable cause standard is the requirement that a law enforcement officer's mistakes be reasonable.[12] We determine

---

[6] Neb. Rev. Stat. § 60-6,108(1) (Reissue 2010); *State v. McCave, supra* note 2.

[7] *State v. McCave, supra* note 2; *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010).

[8] *State v. McCave, supra* note 2. See, also, *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009).

[9] *State v. McCave, supra* note 2. See, also, *State v. Eberly*, 271 Neb. 893, 716 N.W.2d 671 (2006); *State v. Ball*, 271 Neb. 140, 710 N.W.2d 592 (2006) (citing *Beck v. State of Ohio*, 379 U.S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)); *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000).

[10] *State v. McCave, supra* note 2. See, also, *State v. Smith, supra* note 7; *State v. DeGroat*, 244 Neb. 764, 508 N.W.2d 861 (1993).

[11] *State v. McCave, supra* note 2. See, also, *State v. Smith, supra* note 7.

[12] *State v. McCave, supra* note 2. See, also, *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949).

whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances.[13]

The key inquiry in this case is whether it was reasonable for Miller to conclude that Matit's vehicle was situated on property which was open to public access. We considered the question of whether a roadway was open to public access in *State v. Prater*[14] and *State v. McCave*,[15] reaching a different result in each case. In *Prater*,[16] the defendant was found slumped over in the driver's seat of a vehicle with its engine running in an apartment complex parking lot. He was charged with violating an Omaha city ordinance that was substantially the same as § 60-6,108(1) in that it applied "'anywhere throughout the city except private property which is not open to public access.'"[17] We stated that property is "'"open to public access"'" if the public has permission or the ability to enter and noted that this was primarily a question of fact.[18] We concluded that the trial court did not err in finding that the city ordinance applied to the parking lot, which was also used by maintenance workers and guests of residents, and thus was open to public access.

In *McCave*,[19] the defendant's vehicle was parked in a residential driveway, with a portion of the vehicle overhanging the sidewalk. We held that the residential driveway was not open to public access as a matter of law because it met the statutory definition of "private road or driveway," i.e., a "'way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons.'"[20] We further reasoned that

---

[13] *Id.*

[14] *State v. Prater, supra* note 1.

[15] *State v. McCave, supra* note 2.

[16] *State v. Prater, supra* note 1.

[17] *Id.* at 657, 686 N.W.2d at 898 (emphasis omitted).

[18] *Id.* at 658, 686 N.W.2d at 898.

[19] *State v. McCave, supra* note 2.

[20] *Id.* at 515, 805 N.W.2d at 307, quoting Neb. Rev. Stat. § 60-649 (Reissue 2010).

this characterization was not affected by the fact the vehicle overhung the sidewalk, because the sidewalk was not intended for use by vehicles.

Matit's vehicle was parked on a paved area between the sidewalk and the street. The arresting officer testified that he understood this area was a part of the city's right-of-way. He also testified that he had observed the area on other occasions and had seen vehicles park in and then leave the paved area. He understood the paved area was so used by both residents of the apartment complex and nonresidents. Based on this evidence, the district court did not err in finding that Miller had a reasonable belief that the vehicle was situated on property that was open to public access.

Miller was justified in approaching the vehicle after observing the driver exit the vehicle and urinate on a tree, which was an unlawful act. When Miller encountered Matit in an intoxicated state, he had probable cause for the arrest because he had observed Matit start the vehicle on several occasions while it was situated on what the officer reasonably believed to be a part of a public roadway. The district court did not err in denying Matit's motion to suppress.

### SUFFICIENCY OF EVIDENCE

The State charged Matit with violating Neb. Rev. Stat. § 60-6,196 (Reissue 2010) by operating or being in actual physical control of a motor vehicle upon a highway or anywhere throughout the state except for private property not open to public access while under the influence of alcohol, or with a concentration of .08 of 1 gram or more by weight of alcohol per 210 liters of his breath. Matit does not dispute the fact that he had a breath alcohol concentration in excess of the lawful limit at the time of his arrest. But he challenges the sufficiency of the evidence to support his conviction on the ground that the State did not prove that he operated or was in actual physical possession of a motor vehicle on a roadway or other area to which the public had access. Our standard of review with respect to this claim is very narrow, in that we must find the evidence to be sufficient if there is any evidence, when viewed in a light favorable to the prosecution, upon which a rational

finder of fact could conclude that the State met its burden of proof beyond a reasonable doubt.[21]

The evidence with respect to Matit's operation or physical control of the vehicle came primarily from the testimony of Miller. He testified that on five separate occasions, he saw Matit start the parked vehicle. Miller could tell the vehicle had been started, because the headlights and taillights came on and exhaust came out of the tailpipe. Each time, the vehicle's engine ran for a few minutes and was then turned off. When Miller approached the vehicle, he saw the ignition keys near the console next to the driver's seat.

[10] Circumstantial evidence may serve to establish the operation of a motor vehicle for purposes of the DUI statutes.[22] And we have recognized that starting a vehicle is an act within the meaning of "operating" a motor vehicle.[23] Viewing the evidence in this case in a light most favorable to the State, as our standard of review requires, we conclude that there was evidence upon which a rational finder of fact could conclude that Matit was operating or in actual physical control of the vehicle immediately prior to his arrest.

Miller testified at trial, as he did at the suppression hearing, that Matit's vehicle was situated on the paved area between the street and the sidewalk. He testified that based upon his understanding of the laws and ordinances of the city of Lincoln, the area where the vehicle was parked was a public right-of-way owned by the city of Lincoln. He testified that no portion of Matit's vehicle impeded the sidewalk. Miller also testified that the area between the street and the sidewalk was open to both pedestrian and vehicular traffic. Whether Matit's vehicle was situated on property open to public access was a question of fact.[24] There was sufficient evidence upon which a rational finder of fact could resolve that question

---

[21] *State v. Wiedeman, supra* note 4.

[22] See, *State v. Portsche*, 261 Neb. 160, 622 N.W.2d 582 (2001); *State v. Hanger*, 241 Neb. 812, 491 N.W.2d 55 (1992).

[23] *State v. Portsche, supra* note 22.

[24] See *State v. Prater, supra* note 1.

in the affirmative and, thus, sufficient evidence to support the conviction.

## EXCESSIVE SENTENCE

Matit argues that the sentence imposed on him is excessive. He was sentenced to a term of 2 to 3 years in prison, to be served consecutively to his sentences in another DUI case. His driver's license was also revoked for 15 years.

Matit was found guilty of a Class III felony,[25] which carries a minimum sentence of 1 year in prison and a maximum of 20 years in prison, a $25,000 fine, or both.[26] His sentence falls within the statutory range for a Class III felony.

[11,12] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[27] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[28] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[29]

The presentence report indicates that Matit has filed two other appeals. One was recently resolved by this court in *State v. Bol*,[30] when we affirmed his convictions for DUI, refusal to take a chemical test, and driving during revocation. The other was decided by the Nebraska Court of Appeals and involved

---

[25] Neb. Rev. Stat. § 60-6,197.03(8) (Cum. Supp. 2012).

[26] Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012).

[27] *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

[28] *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[29] *State v. Sikes, supra* note 5.

[30] *State v. Bol, ante* p. 144, ___ N.W.2d ___ (2014).

a conviction for criminal impersonation, a Class IV felony.[31] Matit's criminal history also includes a DUI in Vermont in 2005, for which he was incarcerated for 6 to 11 months; a DUI in Texas in 2008, disposition unknown; possession of cocaine and providing false information to a police officer in Vermont in 2009, for which he was fined $5,500 and ordered to serve 1½ to 2½ years in prison, but the sentences were suspended; a DUI and refusal to submit to a chemical test in Hall County in 2011, for which he was fined and placed on probation; and a third-offense DUI in Lancaster County in 2011, for which he was sent to jail for 120 days. He was also convicted of third degree domestic assault in Hall County in 2012 and was sentenced to 60 days in jail.

The sentence imposed by the trial court was within the statutory limits for a Class III felony. Based on Matit's criminal record and considering all of the relevant sentencing factors, we conclude the district court did not abuse its discretion in imposing the sentence.

### Prior Convictions and
### Order Nunc Pro Tunc

Matit argues the district court erred in using two prior Vermont convictions to enhance his sentence and in issuing an order nunc pro tunc changing the number of prior convictions from two to three. Both of these assignments of error arise from proceedings that were consolidated at trial with proceedings involving a separate DUI prosecution of Matit. The appeal from that separate prosecution was resolved by this court in *State v. Bol*,[32] and in that opinion, we concluded identical assignments of error were without merit. We reach the same conclusion here.

### CONCLUSION

For the reasons discussed, we affirm the judgment of the district court.

Affirmed.

---

[31] *State v. Bol*, 21 Neb. App. 931, ___ N.W.2d ___ (2014).

[32] *State v. Bol, supra* note 30.