IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. SIECKMEYER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHERE L. SIECKMEYER, APPELLANT.

Filed February 25, 2020.    No. A-19-259.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Robert G. Hays for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

### INTRODUCTION

Following a jury trial, Shere L. Sieckmeyer was convicted of driving under the influence of alcohol (DUI) with a breath alcohol content (BAC) of .15 or more. Her conviction was enhanced to a Class IIIA felony based on two prior DUI convictions. The Lancaster County District Court sentenced Sieckmeyer to 2 years' imprisonment followed by 18 months' postrelease supervision. Her driver's license was revoked for 15 years, but Sieckmeyer could obtain an ignition interlock permit after 2 years of revocation. Sieckmeyer appeals, challenging the denial of one of her proposed jury instructions and the sufficiency of evidence underlying her conviction, both of which are related to whether she was on private property open to public access at the time of her offense. She also contends that her sentence is excessive. We affirm.

- 1 -

BACKGROUND

In December 2017, the State charged Sieckmeyer with DUI, third offense, for an incident that took place on May 22. The State further alleged that Sieckmeyer had a BAC of .15 or more at the time of her offense.

TRIAL

Trial took place on January 10 and 11, 2019, during which the following evidence was adduced during the State's case in chief.

An employee for Capital Contractors (also referred to as Capital Steel) indicated that the business is located at 1001 North 9th Street, Lincoln, Nebraska, which is "right next to the 10th Street bridge." The employee said he was working on May 22, 2017, when around 10:30 a.m. he saw a purple van drive down an alleyway, going "roughly 25 to 30" and "it smacked right into our girder," which he explained was a 20 to 30 ton "I-beam." According to the employee, the van did not use its brakes prior to impact and was disabled upon impact. Exhibit 7, an aerial map of the area of the incident, was marked by the employee to show where he saw the vehicle travel and where it hit the girder. The line drawn by the employee runs north and south, adjacent and parallel to North 10th Street. Based on the markings made by the employee, he saw the vehicle as it came into the alleyway from Y Street, which runs east and west across the north side of the property involved. The vehicle traveled south down the alleyway until it hit the girder, which the employee marked with an "X." The employee recalled making contact with the driver of the van within less than a minute after the van's impact. The employee identified Sieckmeyer as the person he found inside the van; he remembered that Sieckmeyer was sitting in the driver's seat, with alcohol (a "big bottle of vodka" and a 12-pack of a flavored malt beverage) in between the two front seats. Sieckmeyer looked "very confused" and tried to back up the van at one point. The employee stayed with Sieckmeyer until law enforcement arrived shortly thereafter. Sieckmeyer did not consume alcoholic beverages from the time the employee made contact with her to the time law enforcement arrived on the scene.

Joshua Schaaf was employed as a police officer for the City of Lincoln for about 5 years prior to accepting employment elsewhere by the time of trial. To become a certified law enforcement officer, Officer Schaaf received education and training on how to conduct DUI investigations. Officer Schaaf was on patrol on May 22, 2017, a sunny day, when he was dispatched to Capital Steel around 10:30 a.m. regarding an accident. Within minutes, Officer Schaaf responded to the scene. Two witnesses of the event described that a vehicle had been involved in an accident on the property.

Officer Schaaf located a maroon van next to an I-beam atop a railcar. Officer Schaaf thought the van had been "traveling southbound down [Capital Steel's] private lot and then ran into that I-beam." The area where the accident occurred was behind buildings belonging to Capital Steel located between North 9th Street and North 10th Street and south of Y Street. The officer agreed that the area where Sieckmeyer had driven appeared to be owned by Capital Steel but thought the property was open to public access. It was a "dirt area off the road" that appeared to be a "business lot" used by the business to move machinery around or as a driveway for the business. There was no fencing or wall to keep the public out from that area. Officer Schaaf could not recall that there was anything that prevented the public from driving onto the area (the

- 2 -

alleyway) coming off of Y Street. However, the officer also said the dirt area was "[n]ot generally" used by the public and denied that there was any parking lot there that would be used by customers of Capital Steel.

After speaking to the witnesses of the incident, Officer Schaaf approached the driver of the van to find her passed out in the driver's seat. The officer identified Sieckmeyer as the driver by use of her name and "DMV photo." After the officer made contact with Sieckmeyer, she woke up and tried to drive away "but the vehicle was broken." The officer did not attempt to complete any standardized field sobriety tests as Sieckmeyer was "stumbling around quite a bit." The officer observed that Sieckmeyer also had slurred speech, a very strong odor of alcohol about her and in the vehicle, and bloodshot and watery eyes. A search of Sieckmeyer's van revealed an open case and cans of malt beverages and a partially consumed bottle of vodka. Based upon those observations, as well as the observation of the accident that had occurred, Officer Schaaf opined that Sieckmeyer was under the influence of alcohol and not able to drive safely.

Officer Schaaf transported Sieckmeyer to what the State's counsel referred to as "detox" where he read a postarrest chemical advisement form to Sieckmeyer. Sieckmeyer submitted to a chemical test of her breath. A "DataMaster" device was used by the officer to conduct that test (an accident reconstruction coordinator for the City of Lincoln Police Department opined the device was working properly on May 22, 2017). Sieckmeyer's breath sample showed a BAC of .261. Almost 1 hour had passed between the time the officer initially contacted Sieckmeyer in the van and the time Sieckmeyer's breath sample was collected.

Following Officer Schaaf's testimony, the State rested. Out of the presence of the jury, the defense moved for dismissal on grounds that the State failed to make a prima facie case. The district court overruled that motion. Thereafter, the district court found and accepted that Sieckmeyer waived her right to testify. The jury reentered the courtroom, at which time the defense rested. The jury was excused for the day. The defense moved for a directed verdict on the basis of insufficient evidence to allow a reasonable juror to find Sieckmeyer guilty beyond a reasonable doubt; that motion was overruled.

JURY INSTRUCTION CONFERENCE AND JURY VERDICT

On January 14, 2019, out of the presence of the jury, the jury instruction conference took place. Sieckmeyer filed two proposed jury instructions ahead of that time, one regarding the material elements of the offense and one regarding definitions for "[p]rivate road or driveway" and "[n]ot open to the public." During the conference, the defense objected to the district court's proposed instructions concerning the material elements of the offense and definitions; those objections were overruled and the defense's proposed jury instructions were denied. Thereafter, the court instructed the jury and submitted the matter to the jury for deliberation. That same day, the jury found Sieckmeyer guilty of DUI while having a BAC of .15 or more.

SENTENCING AND APPEAL

During the sentencing hearing on February 15, 2019, the State offered two exhibits for purposes of enhancement of Sieckmeyer's conviction. Those exhibits were received into evidence and were found to reflect valid prior convictions (2014 DUI conviction out of Lincoln; 2004 conviction for driving while intoxicated out of Missouri). The district court found that

Sieckmeyer's conviction in the present case was enhanced to a Class IIIA felony beyond a reasonable doubt. Sieckmeyer was sentenced to 2 years' imprisonment followed by 18 months' postrelease supervision. She received credit for 23 days' time served. Her license was revoked for a period of 15 years from the date of her release from incarceration; she could obtain an ignition interlock permit after 2 years of revocation. Sieckmeyer's sentence was to run consecutive to her sentence imposed in a different case (case No. "CR17-1575") and to any other sentence she was serving.

Sieckmeyer appeals.

## ASSIGNMENTS OF ERROR

Sieckmeyer claims, restated and reordered, that (1) the district court erred in refusing her proposed jury instruction containing a definition for "[n]ot open to the public," (2) there was insufficient evidence to sustain her conviction, and (3) the district court imposed an excessive sentence.

## STANDARD OF REVIEW

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the trial court's decision. See *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). The relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id.*

## ANALYSIS

### JURY INSTRUCTIONS

Sieckmeyer claims that the district court erred in refusing her proposed jury instruction defining "'not open to the public.'" Brief for appellant at 15. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002). In a criminal trial, the court in its instructions must delineate for the jury each material element the State is required to prove beyond a reasonable doubt to convict the defendant of the crime charged. *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019). It is the duty of a trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous. *Id.* Jury instructions are not prejudicial if they,

when taken as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence. *Id.*

Sieckmeyer contends her proposed instruction set forth a correct statement of the law, was warranted by the evidence, and she was prejudiced by the district court's refusal to give the tendered instruction to the jury. We begin our analysis by considering the applicable law. Neb. Rev. Stat. § 60-6,108 (Reissue 2010), provides, in relevant part:

> (1) The provisions of the Nebraska Rules of the Road relating to operation of vehicles refer exclusively to operation of vehicles upon highways except where a different place is specifically referred to in a given section, but sections 60-6,196, 60-6,197, 60-6,197.04 [alcohol and drug violations], and 60-6,212 to 60-6,218 [careless, reckless driving violations] *shall apply upon highways and anywhere throughout the state except private property which is not open to public access*.

(Emphasis supplied.)

Sieckmeyer was charged with violating Neb. Rev. Stat. § 60-6,196(1) (Reissue 2010), which provides as follows:

> It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle:
> (a) While under the influence of alcoholic liquor or of any drug;
> (b) When such person has a concentration of eight-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood; or
> (c) When such person has a concentration of eight-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath.

The State further alleged that Sieckmeyer had a BAC of .15 or more at the time of her offense. The jury was instructed that it could return one of three possible verdicts: (1) not guilty, (2) guilty of DUI and/or when she had a BAC of .08 or more, or (3) guilty of DUI while having a BAC of .15 or more.

The jury was instructed that to convict Sieckmeyer of DUI the State had to prove beyond a reasonable doubt the following:

> (1) [Sieckmeyer] was operating or was in actual physical control of a motor vehicle upon a highway or anywhere throughout the state or private property open to public access; and
> (2) At the time she did so she was either:
> (a) under the influence of alcoholic liquor or any drug; or
> (b) had a concentration of eight hundredths (.08) of one gram or more by weight of alcohol per two hundred ten liters of her breath; and
> (3) She did so on or about May 22, 2017, in Lancaster County, Nebraska.

This jury instruction clearly included all the material elements of § 60-6,196(1), as well as provided for the overriding application of § 60-6,108, which requires that the violation took place upon a highway or anywhere else except for private property not open to public access.

To convict Sieckmeyer of the offense of DUI while having a BAC of .15 or more the jury was instructed that the State had to prove beyond a reasonable doubt that

(1) [Sieckmeyer] was operating or was in actual physical control of a motor vehicle upon a highway or anywhere throughout the [s]tate or private property open to public access; and

(2) At the time she did so she had a concentration of fifteen hundredths (.15) of one gram or more by weight of alcohol per two hundred ten liters of her breath; and

(3) She did so on or about May 22, 2017 in Lancaster County, Nebraska.

This instruction also included the necessary elements of § 60-6,196(1), but further provides for a finding of a higher alcohol content for the purpose of sentence enhancement. See, Neb. Rev. Stat. § 60-6,197.03(6) (Cum. Supp. 2018) (person convicted of violation of § 60-6,196 who has two prior convictions and as part of current violation had BAC of .15 or more shall be guilty of a Class IIIA felony and driver's license shall be revoked for 15 years); *State v. Brown*, 300 Neb. 57, 912 N.W.2d 241 (2018) (§ 60-6,197.03 sets forth penalties for DUI convictions under § 60-6,196, including enhanced sentences for offenders who have prior convictions). This particular jury instruction also provided for the overriding application of § 60-6,108, which requires that the violation took place upon a highway or anywhere else except for private property not open to public access.

Finally, Instruction No. 4 provided definitions, which among other definitions not pertinent to the issues appealed, included the following:

"Open to the public" means property that the public has the permission or ability to enter.

"Private Road or Driveway" means every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons.

Sieckmeyer does not challenge deficiencies in the jury instructions other than her contention that the district court should have instructed the jury on the meaning of "'not open to the public.'" Brief for appellant at 15. As set forth above, the jury was instructed on the meaning of "[o]pen to the public." Sieckmeyer's proposed and rejected Jury Instruction No. 2 sought to set forth the following definition: "'Not open to the public' means that neither a property owner nor the owner's guest would reasonably expect that the public might use the private road or driveway."

Sieckmeyer supports the use of this definition based on *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011). In that case, the location of a defendant's arrest for DUI was a residential driveway. The Nebraska Supreme Court pointed out that under § 60-6,108(1), "Nebraska's DUI statutes do not apply to a person's operation or control of a vehicle on private property that is not open to public access." *State v. McCave*, 282 Neb. at 514, 805 N.W.2d at 306. The court noted that it had previously defined "open to public access" in *State v. Prater*, 268 Neb. 655, 686 N.W.2d 896 (2004) (apartment building parking lot considered private property with public access), as follows:

"The word 'access' is defined as 'permission, liberty, or ability to enter, approach . . . or pass to and from,' 'a way by which a thing or place may be approached or reached,' and

'the action of going to or reaching . . . passage to and from.' . . . Thus, the phrase 'open to public access' *means that the public has permission or the ability to enter*."

*State v. McCave,* 282 Neb. at 514-15, 805 N.W.2d at 306 (emphasis supplied).

We note that the jury instruction given by the district court in the present matter used the above italicized language to explain the meaning of "open to the public," so there was certainly no error in the court using this definition.

*McCave* noted that the court had also previously concluded that "'[p]ublic safety requires that DUI statutes and ordinances apply to any property to which the public has access. The purpose of these laws is to protect the public--not to provide a safe harbor for the intoxicated driver in a private parking lot.'" *Id*. at 515, 805 N.W.2d at 306-07 (quoting *State v. Prater*, 268 Neb. at 660, 686 N.W.2d at 900). *McCave* stated that "[w]hen §§ 60-6,108 and 60-6,196 are read consistently, they show that the Legislature intended to prohibit intoxicated persons from operating or being in control of a vehicle even on private property if other motorists might access that property or be endangered by their conduct." 282 Neb. at 515, 805 N.W.2d at 307. Noting that Neb. Rev. Stat. § 60-649 (Reissue 2010) defined a private road or driveway to mean "'every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons,'" the Supreme Court concluded as a matter of law that a residential driveway "is not private property that is open to public access." *State v. McCave*, 282 Neb. at 515, 805 N.W.2d at 307. The court elaborated, "Members of the general public have no right or implied permission to use a private residential driveway. Nor do they have the 'ability to enter' the driveway in the same sense that a member of the public might drive through or use a private parking lot by custom." *Id*. at 515-16, 805 N.W.2d at 307. "So neither a property owner nor the owner's guest would reasonably expect that the public might use the owner's driveway." *Id.* at 516, 805 N.W.2d at 307. This last quotation from *State v. McCave, supra*, is the source of Sieckmeyer's proposed definition for "[n]ot open to the public." However, that language from *McCave* merely explained why the "ability to enter" a private residential driveway was to be treated differently from the "ability to enter" a private parking lot, or as we are dealing with here, the ability to enter other commercial property or alleyways between public streets. The implied permission for the general public to use these types of places was distinguished in *McCave* from private residential driveways where such implied permission does not exist; however, *McCave* did not otherwise change the definition of "open to public access" as established in *State v. Prater, supra*.

In this case, as previously noted, the district court instructed the jury that the phrase "[o]pen to the public" meant "property that the public has the permission or ability to enter," and this substantially tracks with the definition set forth by the Nebraska Supreme Court in *State v. McCave, supra*, and *State v. Prater, supra*. Additionally, the district court correctly instructed the jury in accordance with the statutory definition that "[p]rivate [r]oad or [d]riveway" meant "every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons." § 60-649.

We note that *State v. Prater, supra*, affirmed a trial court's ruling that an apartment building parking lot, where a defendant was arrested for DUI, was private property open to public access. Even though a sign on the property warned that unauthorized vehicles would be towed and the

- 7 -

parking lot was private property intended for use by residents of the apartment complex, there was no indication that the public was not allowed to enter the lot or was prohibited from using the lot under any circumstances. There were no gates or fences surrounding the property. Further, testimony established that the lot was used by guests of residents, as well as by delivery persons and maintenance workers.

Also, in *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016), there was probable cause for a DUI arrest where a defendant's vehicle was parked in a farm implement dealership lot. The Nebraska Supreme Court noted that the lot was bordered by three public highways and could only be accessed by one of those public highways, that there were no gates or locks on the entrances, and that the general public could drive onto the lot. And although there was evidence that customers would not normally park in the lot, *Pester* pointed out that the public was able to access the area and the lot was therefore private property that was open to public access. See, also, *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014) (rational finder of fact could find that defendant's vehicle, located on paved area between street and sidewalk in front of apartment complex, was situated on property that was open to public access); *State v. Blackman*, 254 Neb. 941, 580 N.W.2d 546 (1998) (record supported reasonable inference that before deputy found defendant where he had come to rest in ditch after losing control of motorcycle, defendant had been operating on county road and that defendant's state of intoxication existed when he operated motorcycle on county road).

In summary, a key factor regarding whether private property is open to public access is consideration of whether private property such as commercial parking lots, commercial driveways, or alleyways or ditches adjacent to public roadways or private businesses, are places where other motorists might access such property or be endangered by the intoxicated driver's conduct. See *State v. McCave*, 282 Neb. 500, 515, 805 N.W.2d 290, 307 (2011) ("[w]hen §§ 60-6,108 and 60-6,196 are read consistently, they show that the Legislature intended to prohibit intoxicated persons from operating or being in control of a vehicle even on private property if other motorists might access that property or be endangered by their conduct"). The alleyway Sieckmeyer entered off of Y Street may not have been commonly used by the general public; however, the evidence established that there were no barriers to the alleyway and other vehicles could travel down the alleyway. Officer Schaaf described it as an area that appeared to be a "business lot" used by the business to move machinery around or as a driveway for the business. Such an area would be a place where other motorists could access and be endangered by another driver's conduct. The jury instructions as given are supported by the law and the evidence.

Finally, Sieckmeyer was not prejudiced by the refusal of her tendered jury instruction. As explained previously, the jury instructions contained appropriate definitions for terms relevant to § 60-6,108(1), and included the material elements of the offense for which Sieckmeyer was charged in accordance with § 60-6,196. Therefore, Sieckmeyer has failed to establish reversible error from the court's refusal to give her requested instruction defining "not open to the public." See *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002).

SUFFICIENCY OF EVIDENCE

Sieckmeyer claims the evidence presented at trial was insufficient to support her conviction. She argues that a DUI charge "requires proof that [she] operated or was in the actual

physical control of a motor vehicle upon a highway or anywhere throughout the state except for private property not open to public access." Brief for appellant at 13. Sieckmeyer disputes only whether there was sufficient evidence to show that her vehicle was on private property that was open to public access at the time of her offense. She argues that the Capital Steel employee testified that Sieckmeyer was driving on Capital Steel property, and that Officer Schaaf stated that the area where Sieckmeyer was driving was not an area generally used by the public. "The area did not contain a parking lot for use by customers of the company," and "[t]he area appeared to be used by the business to move their machinery around." Brief for appellant at 14. Sieckmeyer also claims that "[t]here was no evidence that [she] operated a motor vehicle on public property after consuming alcohol." *Id*.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019). The relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Here, the jury was tasked with determining whether the alleyway Sieckmeyer drove down before crashing into the girder was private property open to public access; the jury necessarily concluded it was. The record supports that conclusion. The aerial map shows an alleyway running south from Y Street, somewhat parallel to North 10th Street. The alleyway can only be accessed from Y Street, and therefore, Sieckmeyer was clearly on a public roadway before she proceeded south on the alleyway leading to the Capital Steel girder; further, the alleyway itself was not fenced off, there were no signs prohibiting access, nor any other barriers indicating there was no public access. As set forth in *State v. Prater*, 268 Neb. 655, 686 N.W.2d 896 (2004), and reiterated in *State v. McCave, supra*, public safety requires that the DUI statutes and ordinances apply to any property to which the public has access; the purpose of such laws is to protect the public, not to provide a safe harbor for the intoxicated driver in a private parking area. In this case, although the alleyway was not generally used by the public, and was more a "business lot" used to move machinery around or use as a driveway for the business, the alleyway nevertheless was accessible to the public and was a place where workers and other vehicles would be at risk of harm when driven upon by an intoxicated driver. When reviewing the evidence in the light most favorable to the prosecution, the jury could have found the alleyway was private property with public access beyond a reasonable doubt. Further, even if the jury concluded the alleyway was private property with no public access, it could have reached the same verdict based on the evidence that the only point of access to the alleyway necessitated driving in from Y Street, a public roadway. Sieckmeyer's intoxication was notable at the time of the accident and was confirmed by testing shortly thereafter; as such, a jury could have concluded that her state of intoxication existed as she drove from Y Street down the alleyway since contact was made with Sieckmeyer within less than a minute after she collided with the girder and no one observed Sieckmeyer consume alcohol after that.

As for Sieckmeyer's argument that there was no evidence that she operated a motor vehicle on public property after consuming alcohol, the evidence demonstrates otherwise, as just

discussed. Based on his testimony and markings on the aerial map, the Capital Steel employee observed Sieckmeyer drive from Y Street south down the alleyway until she hit the girder. That same employee made contact with Sieckmeyer in her car within less than a minute and she looked "very confused," and tried to back up the van. There was no evidence that Sieckmeyer consumed alcoholic beverages from the time the employee made contact with her until law enforcement arrived on the scene. Officer Schaaf responded within minutes and Sieckmeyer was passed out in the driver's seat. Once Sieckmeyer woke up, Officer Schaaf observed that she had slurred speech, a very strong odor of alcohol about her and in the vehicle, and bloodshot and watery eyes. There was an open case and cans of malt beverages in the vehicle, along with a partially consumed bottle of vodka. Sieckmeyer's physical and mental state within minutes of the accident indicate that her alcohol consumption had to have occurred before she crashed into the girder, meaning she was under the influence while driving from Y Street and down the alleyway. Again, when reviewing the evidence in the light most favorable to the prosecution, the jury could have found beyond a reasonable doubt that Sieckmeyer operated her vehicle on either a public roadway or private property open to public access while under the influence of alcohol.

EXCESSIVE SENTENCE

Sieckmeyer was convicted of DUI under § 60-6,196(1). Her conviction was enhanced to a Class IIIA felony pursuant to § 60-6,197.03(6) since she had two prior convictions and a BAC of .15 or more at the time of her current violation. A Class IIIA felony is punishable by up to 3 years' imprisonment and 18 months' postrelease supervision, with no minimum sentence and a minimum of 9 months' postrelease supervision if imprisonment is imposed. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2018). However, § 60-6,197.03(6) requires a minimum of 180 days' imprisonment. A 15-year license revocation is also required. § 60-6,197.03(6). Sieckmeyer was sentenced to 2 years' imprisonment followed by 18 months' postrelease supervision. She received credit for 23 days' time served. Her license was revoked for 15 years from the date of her release. Because Sieckmeyer's sentence is within the statutory guidelines, it will not be disturbed absent an abuse of discretion by the district court.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Garcia, supra*. In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The presentence investigation report (PSR) shows Sieckmeyer was 65 years old at the time of her sentencing. Sieckmeyer earned her bachelor's degree in psychology from Texas State University. She had been retired for about 10 years; before that, she was reportedly a co-owner of three mortgage banks for about 10 years.

According to the PSR, Sieckmeyer had a few convictions for minor traffic offenses from 1989 and 1994, for which she was fined. She had several convictions out of Missouri: misusing "'911'" (2004); driving while intoxicated with alcohol (2004); harassment (2004); and first degree trespass (2007). In Nebraska, Sieckmeyer had convictions for: "Dog Running at Large" (2007, fine); two counts of "Animal Running at Large" (2014, fines); first offense DUI--as amended from second offense DUI charge (2014, $500 fine and 6-month license suspension); and "Parks: Closed Enter After Hours" and "Parks: Possess or Consume Alcohol" (2017, fines). Notably, shortly prior to her May 22, 2017, DUI arrest in the present case, Sieckmeyer was arrested on May 12 for a DUI (".15+"); that case (case No. "CR17-1575") was pending at the time the PSR was prepared and taken up with the instant case on the same day for enhancement and sentencing. Circumstances of each pending offense, taken from probable cause affidavits of law enforcement, were included in the PSR.

The PSR contained Sieckmeyer's letter to the district court, in which she discussed her two 2017 DUI arrests (she indicated she was depressed and in chronic pain due to her service dog's ill state in early April, and she drank alcohol to "assuage such"). Sieckmeyer addressed her several health issues and needs she developed after those arrests. She primarily drank alcohol to "assuage" her physical pain. She wrote that steps were being taken to eliminate that "situation" and that medications would be prescribed. The PSR also contained a letter from Sieckmeyer's landlord who stated that Sieckmeyer "does not own a car." The landlord believed that Sieckmeyer would "never drive again regardless of how long she stays in jail."

According to the PSR, Sieckmeyer is single but she had two past marriages. Sieckmeyer admitted that her drinking of alcohol significantly increased during her relationship with her second husband to "deal with the mental and physical abuse." She had not had contact with that ex-husband for the 15 years prior to her interview. After her second divorce, she took care of her mother and did not drink at all. Following her mother's passing in 2011, Sieckmeyer reported her drinking increased to one to two times per week and she would consume up to a bottle of wine, at most. Sieckmeyer classified herself as a "'binge drinker.'" Her "last use was in January 2019 after her service dog passed away." The PSR stated that throughout the interview, Sieckmeyer noted she drank to "cope with mental and physical pain." Sieckmeyer said she was a "'past alcoholic'"; however, she also said, "'[B]ut once an alcoholic, always an alcoholic. I just know how to control my intake.'" Sieckmeyer indicated that her most recent treatment experience happened when she obtained a substance use evaluation at a center in 2018; she said she attended residential treatment at the center and successfully completed the program. When asked during her presentence investigation interview if she felt she needed an additional evaluation or treatment, Sieckmeyer responded, "'I don't know if I need an evaluation or treatment'" but noted she was "willing to comply with any order of the [c]ourt." A brief "Mental Health Screening" was completed by Sieckmeyer as part of the presentence investigation; results showed minimal mental health concerns. The Level of Service/Case Management Inventory showed Sieckmeyer's overall score of "medium high risk to re-offend."

During the sentencing hearing, defense counsel pointed out that except for two traffic cases, Sieckmeyer never had "police contact" until age 50. Counsel said that Sieckmeyer is retired, has a place to live, has three supportive friends/neighbors, and had done treatment and was willing to do treatment again if appropriate. Counsel noted that Sieckmeyer no longer had a car since the

"second incident" (present offense), and he believed Sieckmeyer was an appropriate candidate for probation. Sieckmeyer herself apologized for "the involving [sic] of alcohol" that was "wrong." She acknowledged she had made a mistake and was sorry for it. She knew that the "cost of alcohol" in terms of how it affected her physically and mentally was "definitely negative, adverse to [her] health, [and her] mental well-being." She requested probation and promised not to drink alcohol again.

The State pointed out that Sieckmeyer was not eligible under the law for probation due to her having "two pending DUI offenses at the same time." The State said Sieckmeyer was not "able" to follow orders "not to consume alcohol," noting that she failed to appear the day trial was "supposed to start," and then showed up the next day with an "extremely high BAC" of ".173 or so." Our record does show that on January 10, 2019, the district court stated that Sieckmeyer "did not appear in court on Monday of [that] week to begin trial in this matter. And, in fact, when she was taken into custody, was under the influence of alcohol and trial needed to be further delayed." On appeal, Sieckmeyer complains that the district court did not adequately weigh or consider the sentencing factors relevant to determining sentencing. See *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019) (sentencing factors). She refers to her achievement of a high level of education, her ability to be a productive member of society for most of her life, her social background (her negative past relationship with her second husband versus present positive influences), and her mentality (no history of violent offenses or diagnoses of mental illnesses, present acceptance of guilt, and acknowledgement of her alcohol addiction).

During the sentencing hearing, the district court said it had received, reviewed, and considered the PSR. The district court considered Sieckmeyer's "lack of insight" regarding the kind of threat she presented to the community as to what "alcohol does to a person" when the person drives a vehicle on the streets of the community. The court considered that both the incidents in 2017 happened within a short time of each other and noted the "incredibly high" BAC involved in each of those incidents (".261" and ".270"). The incidents occurred during the "morning during the week" when the "average citizen" was traveling on the roads going to work or the grocery store or taking children to school. The court noted that Sieckmeyer had a drug and alcohol evaluation and treatment done in the past, but said it was "obvious" that she continued to drink alcohol. The court added, "We weren't able to start one of the two jury trials that we had to have for you because you were under the influence of alcohol and unable to come to court." The court noted she had been found guilty in the present case (and in the other 2017 DUI offense case) and the enhancement of those convictions. The court found that the safety of the community had reached a point of outweighing a consideration for any rehabilitation that Sieckmeyer might be able to attain. The court concluded that imprisonment was necessary in the instant case for the protection of the public because the risk was substantial that, during any period of probation, Sieckmeyer would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of her crime and promote disrespect for the law.

The record does not show that the district court considered anything inappropriate when sentencing Sieckmeyer. The court reviewed and considered the PSR and voiced reasonable concerns as set forth above. All of the information that is the focus of Sieckmeyer's argument was included in comprehensive detail in the PSR and some of it was then highlighted again in her

attorney's argument during the sentencing hearing. The district court did not abuse its discretion when sentencing Sieckmeyer.

## CONCLUSION

For the foregoing reasons, we affirm Sieckmeyer's conviction and sentence.

AFFIRMED.

PIRTLE, Judge, participating on briefs.